C. M. COMPTON & SONS, plaintiffs in error, *vs.* SARAH G. PITMAN *et al.*, defendants in error.

1. Land was devised to the wife for life, and at her death to be equally divided between two daughters, L. and E. Judgments were obtained against the representative of the estate on debts due by the testator. After the rendition of the judgments and death of the tenant for life, the land was equally divided between the daughters, L. and E. Subsequent to this L. mortgaged the portion she received to C. Plaintiffs in the judgments caused their executions to be levied on the share received by E. The executions not being satisfied from the proceeds of this levy, they were levied on the land of L. C., the mortgagee, filed a bill to enjoin the sale under this levy, on the ground, amongst others,

that plaintiffs made an agreement with E. or those holding under her, whereby they remitted all claims on her land for $1,000 00, when the same was worth nearly four times that sum, and that thereby the whole of the balance of the executions, amounting to about $6,000 00, is sought to be enforced against the land of L., on which he holds the mortgage:

*Held*, That the right of contribution existed between L. and E. as to the payment of the executions, and if the creditors discharged all claims on the land of E, for less than the proportionate share of her liability to contribute to L.—C., as the creditor of L., by mortgage, which has been foreclosed, is entitled to assert her rights, as well as his own equities arising out of such facts, against such creditors.

If the facts recited are established on the final hearing, and a sufficient showing was made on the application for injunction, to entitle complainant to such hearing—only one-half of the amount of the executions—not deducting the credit of $1,000 00 collected of E., should be enforced against the land mortgaged to C. The levy should proceed and the land be sold, and the amount it may bring, in excess of one-half of the executions, should be impounded by direction of the Chancellor to abide the final determination of the cause.

2. The evidence at the hearing for an injunction, shows no equity arising out of the question as to part of the land received by L. being turned over to her by the tenant for life (who was the executrix) before the judgments were obtained, nor do the facts shown in the matter of the release by the creditors to L. of certain lands of her deceased husband's estate, although he was a co-defendant in some of the judgments, authorize the injunction to be enlarged, as her claim for dower and twelve months' maintenance, both of which had been assigned and set apart, would exhaust the same.

Injunction. Levy. Judgment. Contribution. Before Judge BARTLETT. Baldwin County. At Chambers. September 18th, 1873.

P. M. Compton & Company filed their bill against Sarah G. Pitman, Henrietta Miller, administratrix of Joseph Miller, deceased, James H. Nichols, executor of Thomas B. Lamar, deceased, and James W. Moore, sheriff of Hancock county, containing substantially the following averments:

1st. Complainants have mortgages on the "Justice" and "Davis" places of Eliza A. Roberson, lying in Hancock county; first mortgage, dated April 4th, 1870, on which $493 43 is due, besides interest and cost; second, dated No-

vember 29th, 1870, on which $1,862 75 is due, besides interest and costs, and both are foreclosed.

2d. The sheriff of Hancock county levied upon said "Justice" and "Davis" places in June, 1872; upon the first, with the execution of Joseph Miller *vs.* Araminta Speights, executrix of John Speights, issued from Baldwin Inferior Court at its May term, 1866; upon the second, with the execution of Sarah G. Pitman *vs.* said Araminta Speights, executrix as aforesaid, issued upon a judgment obtained at the same term of said Inferior Court. The *fi. fa.*, of James H. Nichols, exector of Thomas B. Lamar, *vs.* Araminta Speights, executrix as aforesaid, issued upon judgment of August term, 1867, of Baldwin Superior Court, was in the sheriff's hands to claim money on distribution.

3d. William A. Roberson was principal and John Speights was surety, on the notes on which said judgments were obtained; judgments were likewise obtained on said notes against Roberson's administrator.

4th. Eliza A. Roberson arrested the sale of said "Justice" and "Davis" places under said levy of June, 1872, by a claim returnable to October term, 1873, of Hancock Superior Court.

5th. John Speights devised his lands to his wife for life, remainder to his daughters, Louisa Ray and Eliza A. Roberson, and made his wife executrix of his will; as such she assented to the "Justice" place, as a legacy, in 1863; the same year she relinquished her life estate therein, and gave possession thereof to Eliza A. Roberson, as part of her legacy under her father's will.

6th. The judgments of Pitman, Nichols and Miller are no legal liens on said "Justice" place, because obtained three and four years after such assent and delivery. The way for these creditors to reach the "Justice" place is to sue Eliza A. Roberson for contribution.

7th. Eliza A. Roberson consented for Pitman, Nichols and Miller, plaintiffs in *fi. fa.*, to take a verdict in the claim pending in Hancock Superior Court, declaring the "Justice"

and "Davis" places subject to their executions—she receiving as a consideration therefor a written release from said plaintiffs in *fi. fa.* of eight hundred acres of land, less her dower in five hundred acres thereof—all that remains of her husband's, William A. Roberson, the principal debtor's lands, from the liens of their judgments and liability to their executions.

8th. This release of the property of the principal discharges the surety, and complainants as mortgage creditors of the surety's legatee can set up this discharge.

9th. The bill prays—

1st. That the "Justice" place may be decreed not subject to the liens of the judgments of Pitman, Nichols and Miller, because it was a legacy assented to, paid, and vested, before said judgments were obtained.

2d. That both the "Justice" and "Davis" places are discharged from liability to these executions, because Speights, the surety, and his property, are discharged by releasing the principal's lands.

3d. That the said executions be enjoined until the further order of the Court.

4th. General relief.

The amendment avers—

1st. Pitman, Nichols and Miller, plaintiffs in *fi. fa.*, well knew that Speights was only surety, and so did their attorneys, Crawford & Williamson.

2d. The lands of John Speights were equally divided between his daughters, in the year 1869, Eliza A. Roberson receiving the "Justice" and "Davis" places; Louisa Ray, the "Homestead," "Ennis" and "Babb" places—each share worth $3,800 00.

3d. Pitman, Nichols and Miller had these executions levied upon the "Homestead," "Ennis" and "Babb" places, and they were advertised for May sale, 1872; pending said levy and advertisement, and a few days before May sale, plaintiffs in *fi. fa.* compounded with Sallie Roberson (the daughter of Louisa Ray) and Sallie's husband, J. A. P. Roberson, (who

were in possession of said three places), for the sum of $1,000 00—and loaned said Sallie and J. A. P. Roberson their executions to buy said three places for said sum—the sheriff stating publicly at the time of crying said property for sale, that the places were only sold to perfect titles.

4th. Said plaintiffs in *fi. fa.* admit that the three places were assets in the hands of the executrix, Araminta Speights, at the time their judgments were obtained against her and at the time of her death.

5th. The "Justice" place is discharged from the liens of the judgments of Pitman, Nichols and Miller, because said plaintiffs in *fi. fa.* have released the "Homestead," "Ennis" and "Babb" places, worth $3,800 00, for $1,000 00, and they cannot proceed against the "Justice" place, which was a legacy assented to, vested and paid, and in the hands of the legatee, Eliza A. Roberson, before said judgments were obtained, until the assets in the hands of the executrix are exhausted.

6th. Both "Justice" and "Davis" places are discharged, or else said plaintiffs in *fi. fa.* are precluded from the right to claim more than $1,000 00 from Eliza A. Roberson. The "Homestead," "Ennis" and "Babb" places are worth $3,800 00. Plaintiffs in *fi. fa.* released them for $1,000 00, leaving their executions fraudulently open for $5,000 00 to be levied of the "Justice" and "Davis" places. Plaintiffs in *fi. fa.* thus violate the rule of law that legacies must abate *pro rata* to pay the testator's debts, and by compounding with Sallie Roberson, deprived Eliza A. Roberson of her right to compel contribution from her co-legatee, Louisa Ray.

7th. A prayer for a discharge of the "Justice" place, on the fifth ground taken in the amendment.

8th. A prayer for a discharge of both places, on the sixth ground, and for general relief.

Sarah G. Pitman and Henrietta Miller, administratrix, by their answers, admit the following allegations:

1st. As to the mortgages of Compton & Sons; as to the executions having been levied in June, 1872; the stay of sale by the claim of Eliza A. Roberson; say, moreover, that Pit-

man's execution is against John Speight's estate alone, and that $7,000 00 were due on all the executions at the time of said levy.

2d. Deny that the "Justice" place was assented to as a legacy in 1863; say that the executrix had possession of it, as unadministered assets, in 1867, and that the records of the Court of Ordinary show no such assent.

3d. See exhibit A of answer, being the petition of Eliza A. Roberson, in 1869, to the Baldwin Court of Ordinary, asking an equal division of her father's lands between her and her sister, Louisa Ray; Ordinary's order appointing partitioners and their division of the land by lot; the affidavits of J. A. P. Roberson and Callaway, stating that Araminta Speights had possession of the "Justice" place till her death, and Eliza A. Roberson did not get possession till 1869, and John Ray swears that he had possession of said place till 1869.

4th. Deny the executrix's power to assent, under the provisions of Speight's will, and because assent was before probate.

5th. Therefore, the "Justice" place is subject to the liens of these executions.

6th. Admit the release of the eight hundred acres of land; deny the effect claimed for it, *i. e.*, a discharge of Speights, and deny the suretyship of Speights.

7th. The year's support execution of Eliza A. Roberson, for nearly $2,000 00, against estate of William A. Roberson, is prior to their executions in law. The dower of said Eliza annulled their levy as to five hundred acres, and the three hundred acres left would not pay the execution for the year's support, for they are not worth more than $900 00. Wherefore, the estate of the surety is not damaged by the written release by said plaintiffs in *fi. fa.* of the lands of William A. Roberson, principal.

8th. The word "surety" was not written after Speight's name in the notes, nor does the fact of suretyship appear in the judgment.

9th. The homestead (eight hundred acres of land,) was included by Eliza A. Roberson in her mortgages to complainants. The homestead was taken after said mortgages were made, and the lands valued at $2 50 per acre, in gold.

10th. Eliza A. Roberson is utterly insolvent.

11th. The answers further aver that defendant's *fi. fas.* were levied in 1868, but their enforcement restrained, by military orders, and the Constitution of 1868, forbidding the enforcement of executions founded on slave debts.

The Chancellor refused to enjoin the executions as prayed. Whereupon the complainants excepted.

BENJAMIN W. BARROW; WILLIAM McKINLEY, for plaintiffs in error.

CRAWFORD & WILLIAMSON, for defendants.

TRIPPE, Judge.

1. When the legatees are in possession of their legacies by legal authority, and the assets of the estate are exhausted, a creditor may proceed against each legatee for his *pro rata* share: New Code, section 2467. The right exists between such legatees to call upon each other for contribution, where one has been compelled to advance more than his share of the liability: 8 *Georgia*, 43. This being so, a creditor cannot compound with one legatee, equally liable with another, for less than the *pro rata* share of that one, discharge his lien on the property received by such legatee, when it is worth the full proportion of the legatee's liability, and then proceed to enforce the whole balance of his claim on the legacy received by another legatee. It may here be stated that it does not sufficiently appear that there was, or that there could have been, under the provisions of the will of John Speights, an assent by the executrix and a legal delivery by her to Eliza Roberson, of the land claimed to have been so turned over to her before the judgments were obtained. The lands were given to the widow, who was the executrix, for life, and at

her death to his two daughters, Mrs. Robertson and Mrs. Ray. The executrix did not have the power to select this particular place and give it to either one of the daughters as part of her share. Both the remaindermen had a vested right in the whole land *per my et per tout*. Indeed, in 1869, the two legatees, after the death of the tenant for life, regularly and by legal proceedings partitioned the land. So the question does not arise as to what are the rights and powers of judgment creditors, whose judgments are obtained after the legacies have been assented to by the executor and possession delivered to the legatees. The case is simply this, a judgment creditor has a lien on the property of both legatees. A creditor of one of those legatees has a lien on the property of one only. The first creditor, knowing all the facts, for a sum of money less than the value of the property received by one legatee, and less than what is her proportionate liability, discharges his lien on the property received by that one, and proposes to appropriate the whole property received by the other to the payment of the balance of his debt. We do not pronounce that these are absolutely the facts, which a jury has found or is compelled to find on the hearing. But we speak of them as presented for the purpose of the injunction asked for.

If a creditor have a lien on two funds, and another creditor has a lien on but one of the two, the latter can compel the former to proceed against that fund on which he has no lien. If a plaintiff in execution, for a valuable consideration, release property which is subject thereto, it is a satisfaction of such execution to the extent of the value of the property so released, so far as creditors and purchasers are concerned: New Code, sec. 3658.

The equity of these principles covers this case, and if the facts recited are established at the hearing, only one-half of the amount of the executions, not deducting the $1,000 00 paid by Mrs Ray, should be enforced against the land mortgaged by Mrs. Roberson to complainants. The levy should proceed, and the amount the land may bring, in excess of one-

half of the executions, should be impounded, by direction of the Chancellor, to abide the final determination of the cause.

2. It has already been stated that there was no equity, under the facts in the record, arising out of the question as to part of the land being turned over to Mrs. Roberson by the executrix before the judgments of the defendants in error were obtained. Nor do the facts shown in the matter of the release by the creditors to Mrs. Roberson, of certain lands of her deceased husband, although he was a co-defendant in some of the judgments, authorize the injunction to be enlarged beyond what is above indicated. Mrs. Roberson's claims for dower and twelve months' support, both of which have been assigned, would exhaust what was so released. It was simply a release of what could not have been made liable to either complainants' or defendants' claims. Hence, no damage to anybody, and, consequently, no equity can spring out of it. Let the injunction be granted, as has been already suggested.

Judgment reversed.