PORTWOOD *et al. v.* HUNTRESS, guardian, *et al.*

Where one person is interested in maintaining against several a contention, or contentions, which they have a community of interest in resisting ; or several persons have a community of interest in maintaining against one a contention, or contentions,which he is interested in resisting ; or there are several who have a community of interest in maintaining a contention, or contentions, against several who have a community of interest in resisting the same ; and such contention, or contentions, is or are involved in two or more pending suits, equity will consolidate them and bring to trial in one action the disputed issues. But this will not be done as to cases the consolidation of which would bring about a promiscuous struggle in which parties on one side with no

such community of interest as to the one point in controversy, when only one,. or in all the disputed points when there are more than one, would be compelled to litigate with another or others.

·The petition in the present case was not, as against the special demurrers thereto, maintainable ; and consequently there was no error in denying the interlocutory injunction.

Argued June 20,—Decided July 18, 1901.

Petition for injunction.    Before Judge Brinson.    Taliaferro· superior court.    March 13, 1901.

*Cloud & Jennings* and *Samuel H. Sibley*, for plaintiffs.
*A. H. Davis* and *W. O. Mitchell*, for defendants.

LUMPKIN, P. J.    On August 28, 1876, a judgment was rendered by the superior court of Taliaferro county in favor of T. M. Bryan, as administrator of the estate of J. B. Hart, against Absalom G. Evans.    This judgment and the execution issued thereon were subsequently assigned to John C. Hart.    A constitutional homestead, containing 307 1/2 acres of land in that county, was, in August, 1877, duly set apart to Evans as the head of a family consisting of his wife, Mary E., and several minor children.    By a deed dated March 14, 1882, and recorded April 1, 1882, Evans and his wife undertook to convey to R. O. Evans, in fee simple, 200 acres of the land embraced in the homestead.    On April 18, 1882, he executed and delivered to Ellen E. Huntress a mortgage by which it was intended to create in her favor a lien on the land described in the deed just mentioned.    Mrs. Evans died March 12,. 1894, and Absalom G. Evans died March 12, 1897.    M. F. Griffith was appointed administrator on his estate.    On the first Tuesday in January, 1898, the homestead estate having previously terminated, the administrator sold the entire tract of 307 1/2 acres to G. T. Edwards for $755, and made him a deed thereto on the 15th day of that month.    On the same day, Edwards conveyed a portion of the tract to E. I. Anderson, and the balance of it to Jesse· Portwood.    Thereafter, C. W. Huntress, as guardian of Ellen E. Huntress, who had obtained a judgment of foreclosure upon the mortgage of R. O. Evans to her, caused an execution issued upon such foreclosure to be levied upon 200 acres of land as described in that mortgage.    Separate claims were filed by Edwards, Anderson,. and Portwood.    Upon a trial of Anderson's claim the superior court· rendered a judgment in his favor.    That judgment was reversed by

this court at the March term, 1900. See 110 *Ga.* 427. Subsequently all of the claims were withdrawn, and Huntress, guardian, was again proceeding to enforce the collection of the execution in his favor by a sale of the mortgaged premises. New claims were filed by Anderson and Portwood. In the meantime R. O. Evans had brought against them, respectively, separate actions of ejectment for the recovery of described parcels of land which he alleged constituted portions of the 200 acres which had been conveyed to him by Absalom G. and Mary E. Evans in 1882. While these four cases were pending, Portwood and Anderson filed, against C. W. Huntress as guardian, Ellen E. Huntress his ward, R. O. Evans, John C. Hart, and the sheriff of Taliaferro county, an equitable petition returnable to the February term, 1901, of the superior court of that county. Griffith, as administrator of the estate of Absalom G. Evans, was subsequently made a party defendant. In this petition the facts above recited were set forth, and it also contained numerous other allegations, of which those now material were to the following effect:

The deed from Absalom G. Evans and his wife to R. O. Evans and the mortgage executed by him to Ellen E. Huntress were, because of indefiniteness and uncertainty in the descriptive terms therein used with respect to the land to which they referred, and for other stated reasons, absolutely null and void. R. O. Evans never in fact set up title in himself to the 200 acres of land which Absalom G. and Mary E. Evans undertook to convey to him, but on divers occasions made declarations and did acts (all of which were particularly set forth) which in law and in equity estopped him, as against Portwood and Anderson, from claiming title to any portion of the land originally constituting the Evans homestead. The judgment on which the Hart execution was issued was, next to the expenses incident to the burial of Absalom G. Evans and certain expenses of administration, the highest lien upon that land. Of the proceeds of the sale thereof which was made by the administrator, he paid $520 on that execution, leaving a balance still due thereon. The estate of Absalom G. Evans, consisting entirely of the 307 1/2 acres of land, is insolvent. The prayers of the petition in substance were: (1) That R. O. Evans be enjoined from the further prosecution of his actions of ejectment. (2) That Huntress, guardian, be enjoined from "proceeding further with the

two claim cases." (3) That the sheriff be enjoined from selling under the mortgage execution any of the lands mentioned in the petition. (4) That all of the issues involved in the four pending cases be determined and disposed of by an appropriate judgment to be rendered upon the plaintiffs' petition. (5) That, accordingly, the deed from Absalom G. Evans and his wife to R. O. Evans, and the mortgage from him to Ellen E. Huntress, be declared null and void, and that the same be delivered up and canceled; or (6) that if those instruments are valid, and the land covered by the mortgage shall be sold thereunder, the plaintiffs, by equitable subrogation to the rights of John C. Hart, be paid from the proceeds of the sale $520, or such proportions thereof as they may, under the facts set forth, be entitled to receive.

A restraining order was granted, and a day in advance of the appearance term was set for the hearing of an application for an interlocutory injunction. That hearing was afterwards postponed, and did not take place till March 13, 1901, which was after the adjournment of the appearance term of the case. At that term Huntress, guardian, and R. O. Evans each demurred generally and specially. One of the guardian's special grounds of demurrer was that "there is a misjoinder of causes of action, this defendant having no interest in the ejectment suits brought by R. O. Evans;" and one of the grounds of his special demurrer was, that " there is a misjoinder of causes of action, in that the actions of ejectment brought by this defendant have no connection with the proceeding by Huntress to foreclose his mortgage." The judge passed an order dissolving the restraining order and denying an injunction, and this is the main error assigned in the bill of exceptions sued out by Portwood and Anderson. If the special grounds of demurrer set forth above were well taken, this, of course, would afford an all-sufficient reason for upholding the judgment under review. That they were well taken we have no doubt.

If this petition did not seek to join several distinct and incongruous causes of action, it would be difficult to conceive of one having such a defect. R. O. Evans was endeavoring, by separate actions at law against two persons, to recover two parcels of land. In these controversies, Huntress, guardian, had not the slightest concern. It was, under the facts alleged, entirely immaterial to him whether R. O. Evans did or did not prevail over Portwood and An-

derson. On the other hand, it is equally clear that there was no equitable reason for complicating the litigation between Huntress and either of the claimants (which simply involved in each claim case the question whether or not the parcel of land therein claimed was subject to the execution) with a settlement of the disputes between R. O. Evans and either of these same persons over their respective rights of title or possession. R. O. Evans was seeking to recover these lands, and Huntress was seeking to sell the same. It is certain that they had no common purpose in view. While the question of the sufficiency of the descriptive portions of the deed under which R. O. Evans claimed title and of his mortgage to Huntress might be involved in all four of the cases, the question whether R. O. Evans had by his declarations or conduct estopped himself from setting up title against Portwood and Anderson could in no possible way be injected into the claim cases. While, therefore, on separate trials of the ejectment actions, or a trial of both together, R. O. Evans might be defeated solely on the ground that he was so estopped, Huntress, on separate trials of the claim cases, or a joint trial of the two, would have no such difficulty to contend with. Obviously, it would be subjecting Huntress to an unnecessary hazard to compel him to try his issues with Portwood and Anderson along with other issues in which he had no interest. He might, with two good cases, lose both by being forced into bad company. It may be true that each of the four cases involves an issue, or issues, common to all; but it is certainly not true that all of the issues in each case are identically or even substantially the same. It is only when this latter condition exists that equitable consolidation can be demanded as matter of right. When one person is interested in maintaining against several a contention, or contentions, which they have a common interest in resisting; or when several have a like interest in maintaining against one a contention, or contentions, which he is interested in resisting; or when several have a common interest in maintaining against several a contention, or contentions, which they have such an interest in resisting; and such contention, or contentions, is or are involved in two or more pending suits, an appropriate equitable proceeding will lie to bring the issues in dispute to a determination by one trial. But this remedy is not available when consolidation would simply bring about a pell-mell struggle in which parties on the one side, with no community

of interest among themselves as to the one point in controversy, when there is only one, or as to all the disputed points, when there are more than one, would be compelled to contend with a single party on the other side, or with parties thereon who are also lacking in such a community of interest among themselves. This doctrine is illustrated by the decision of this court in *Smith* v. *Dobbins*, 87 *Ga.* 303, and supported by the authorities there cited. It was applied in *Webb* v. *Parks*, 110 *Ga.* 639. And see *Bowden* v. *Achor*, 95 *Ga.* 243; *Stuck* v. *Southern &c. Co.*, 96 *Ga.* 95. The first of these cases is easily distinguishable from the case in hand, and the other is on the same line with the decision now rendered.

While the order of the judge denying the injunction was not expressly based upon the question of law dealt with in the foregoing discussion, the fact that the plaintiffs' petition was not, as against the special demurrers above mentioned, maintainable, leads inevitably to the conclusion that the action taken by the judge should not be disturbed by this court. See, in this connection, *Ripley* v. *Eady*, 106 *Ga.* 423, and *Coker* v. *Montgomery*, 110 *Ga.* 22.

*Judgment affirmed. All the Justices concurring.*