CHAMBLEE *v.* ATLANTA BREWING & ICE COMPANY *et al.*

MORRIS *v.* ATLANTA BREWING & ICE COMPANY *et al.*

An equitable petition alleged, in substance, as follows: A testatrix was indorser on certain promissory notes, which were sued to judgment against the executors of her estate, after her death. Before the rendition of the judgment, all of the property of the decedent, consisting of real estate, had been conveyed by the sole legatee under the will, in separate parcels, to different purchasers, of whom the petitioner was one, and some of such parcels were again conveyed by the purchasers to others. One of the deeds by the sole legatee was also signed by the executors as individuals. Afterwards the judgment creditor caused his execution to be levied on several parcels of land so conveyed. The several purchasers, including the petitioner, interposed claims to their respective lots, and the claim cases thus made are still pending and about to be brought to trial. If any of the property levied on is subject to the execution, all of it is so; and there are also three lots not levied on. If subject, each parcel is bound to contribute a pro rata part of the judgment debt. The estate, the executors individually, and the legatee are each insolvent, and the executors and legatee are non-residents of the State. There is no other property, from which the amount due on the judgment can be realized. The ends of justice would be best subserved by having all of the issues tried in one case; and the proportionate amount due by each of the claimants, if any amount be so due, should be determined in one action. It was prayed that all of the claim cases be enjoined; that the rights of all the parties should be determined in this case, and the amount of contribution of each be decreed. The plaintiff in execution filed no demurrer. Two of the claimants of lots demurred. *Held,* that the petition was not subject to such demurrers.

Argued May 19,—Decided November 19, 1908.

Equitable petition. Before Judge Ellis. Fulton superior court. September 27, 1907.

The Atlanta Brewing & Ice Company filed its equitable petition against C. J. Simmons and several other defendants. It alleged, in brief, as follows: On September 25, 1905, Simmons obtained a judgment against L. D. and A. C. Morris, as individuals and as executors of the estate of Mrs. Elizabeth Morris, for $4,500 principal, $1,233.97 interest, $573.97 attorney's fees, and costs, the judgment being based on a note given by L. D. & A. C. Morris and indorsed by Mrs. Elizabeth Morris in 1902. A fi. fa. issued and was levied on several tracts of land separately. These were severally claimed by the other defendants besides Simmons. An abstract of title, briefly stating the grantor, grantee, consideration,

date of execution, date of record, character of instrument, and the property covered by it as to each piece of property claimed, was set out, beginning in each case with a conveyance into Elizabeth Morris and mentioning as one link, in the chain her will dated in 1902, and recorded in August of that year. All of the property was owned by Mrs. Morris at the time of her death, and passed under her will to Miss Queen Morris. "If any of said property before described is subject to said fi. fa., all of said property is equally subject; and all of said property should, in proportion to its value or upon other equitable principles, be required to contribute pro rata to the satisfaction of said fi. fa. Said C. J. Simmons claims that said property is subject to the fi. fa. owned by him, on the ground that the property of Mrs. Elizabeth Morris was subject to the payment of her debts and legal obligations prior to any distribution. of the estate left by her, between her devisees." On information and belief it is alleged that L. D. and A. C. Morris are both insolvent. The petitioner has filed a claim to the lot held by it and which has been levied on under the fi. fa. mentioned, and its claim and the others are now pending. In none of the cases can the property be subjected without other equitable proceedings. The suits are ready for trial, and some of them are being pressed for immediate trial in the superior court where this suit is filed. If each of them proceeds separately, the result would be a multiplicity of suits, and each of the claimants, after payment of the fi. fa., would be entitled to contribution from the remainder of those holding their property in the same situation. Each of the claims would have to be tried separately; "and your petitioner avers that, under equitable principles, a temporary restraining order should be granted; and your petitioner shows that the ends of justice would best be subserved by having all of said issues tried in one case, and the proportionate amount due by each of said claimants, if there be any amount so due, should be determined in one action." The prayer is, that the trial of the claim case be enjoined, and that the rights of a'l the parties should be determined in this case, and the amount of contribution of each of the defendants be decreed; also for general relief and process. Three other lots, the title to which came through the will of Mrs. Morris to the holders thereof, were described, and it was alleged that they were equally subject to the fi. fa. with the lot of petitioner, but were not levied on. By amend-

ment it was alleged that the property described was all of the property of the estate of Mrs. Morris which the plaintiff could discover, or which could be subjected to the execution of Simmons; that the estate is insolvent, the executors as such and as individuals and Queen Morris are all insolvent and non-residents; and that if the property of the petitioner were subjected to the payment of the fi. fa., it would be compelled to proceed against the real estate described, which would be its only recourse for contribution; and that, in any event, the ratable proportion to pay petitioner, if any, could better be determined in a court of equity with all parties before it.    Mrs. Chamblee, one of the defendants, who had interposed a claim to the levy of the execution of Simmons on a certain lot other than that claimed by the present petitioner, interposed a demurrer on the following grounds: "(1) Because the said petition sets forth no cause of action in favor of said plaintiff against said defendants, and especially as against this defendant.    (2) Because the said petition sets forth no ground entitling the plaintiff to have any relief against this defendant.    (3) Because the said petition does not set forth sufficient facts showing that the plaintiff is entitled to any contribution from this defendant.    (4) Because the facts stated in the said petition show that said plaintiff has not paid nor been adjudged to pay any sum of money to the said defendant, Simmons, upon the said execution set forth in said petition, and that the said plaintiff is therefore not entitled to maintain a bill for contribution against this defendant.    (5) Because the facts set forth in said petition fail to show that the property bought by this said defendant as set forth in said petition is subject to the said execution of the said Simmons.    (6) Because the facts set forth in said petition show that the property of this defendant described in said petition is not subject to the said fi. fa. of the said Simmons.    (7) Because the said petition shows that the said plaintiff has filed a claim to the levy of the fi. fa. of the said Simmons upon the property claimed by plaintiff in said petition as belonging to it, and in said claim is denying that said property is subject to said fi. fa., and that therefore said plaintiff can not maintain this equitable petition for the purposes set forth therein."    The demurrer was overruled, and she excepted.    E. S. Morris, another claimant, also demurred, and

upon the overruling of his demurrer he excepted. The two cases were argued together in this court.

*King, Spalding & Little, E. A. Neely,* and *Edgar Latham,* for plaintiffs in error.

*Slaton & Phillips* and *Rosser & Brandon,* contra.

ATKINSON, J. Inasmuch as a judgment in Georgia binds all the property of the defendant from its date, and the plaintiff in the execution may levy on any of such property which is subject to the lien of his judgment, at his option (with the right in the defendant to point out property), if the defendant in an execution duly entered on the docket conveys any or all of his property to others, equity will not delay the plaintiff in execution in the enforcement of his legal right to levy on some portions of the property in order that the purchasers of different parts thereof may adjust among themselves their equities, and will not compel him to levy upon the property in the inverse order of its sale to such purchasers. *Barden* v. *Grady,* 37 *Ga.* 660. Where a plaintiff in execution has caused it to be levied on several pieces of property, and is proceeding to have it enforced in the ordinary legal method, and claims have been interposed by those holding the respective parcels, whether one of them can assert that it is necessary for the plaintiff to go into equity in order to enforce his execution, and allege his equities for him, and thus compel him to assert his equitable rights instead of proceeding to try the legal issue of subject or not subject, over his objection, is not now before us. In this case the plaintiff in fi. fa. has not demurred to the petition or raised any objection thereto. It is not therefore a question as to whether he might be delayed in his common-law method of procedure in order to adjust the equities between the purchasers of land; but it is a question as to whether, between the purchasers themselves, two of whom alone raise objection by demurrer, an equitable cause of action is set out. Section 3422 of the Civil Code declares, that "if the estate has been distributed to the heirs-at-law without notice of an existing debt, the creditor may compel them to contribute pro rata to the payment of his debt." See also section 3336. If the heirs or legatees took with notice, they would certainly be in no better position. When assets of a trust character are misapplied and can be traced in the hands of persons affected with notice of the misapplication, the trust attaches still to them, and equity will aid in re-

storing them to their legitimate purpose. "A creditor of an estate may follow assets in the hands of legatees or distributees, though they receive them without notice." Civil Code, § 3201. An administrator may recover possession of any part of an estate from the heirs-at-law or purchasers from them, if it is necessary for him to have possession for the purpose of paying debts or making a proper distribution. Id. § 3358. "Equitable assets may be reached by a creditor, in every case where he shows that there is danger of not being satisfied out of legal assets." Id. § 4004. Here the property was conveyed to third parties before the judgment was obtained against the executors of the estate. The conveyances were made by the sole devisee under the will, and in one instance the executors, not signing as such but as individuals, joined with her in the conveyance. The petition alleged that the estate was insolvent, as were also the executors and the devisee, and that the property which had thus been passed out of the hands of the executors while the debt against the testatrix was in existence, but before it had been reduced to judgment, was all out of which the debt could be realized. From the allegations of the petition, most of the property was sold before the suit was instituted. Under these circumstances, it would seem that according to the ruling in *Castellaw* v. *Guilmartin,* 58 *Ga.* 305, the plaintiff could not reach and subject such property in the hands of purchasers from the devisee and those claiming under such purchasers, by mere levy and sale, even if any of the other property could be reached by direct levy. It was not distinctly alleged that the estate had been distributed by the executors and assent given to the legacy to the devisee under whom the various claimants held, but substantially this was the case made. If the lots are all subject by reason of distribution and their passing into the hands of others while the debt was in existence but before the rendition of the judgment, they are liable pro rata. If they are liable pro rata and can only be made so in equity, and if the owner of one should pay more than his pro rata share, and could then require the others to contribute proportionately, there would seem to be no sound reason why the equities between the parties should not be adjusted in a single case. The liability of these lots to the payment of the debt in each case involves the question of distribution of the estate and conveyance by the devisee before payment of the debt. It was alleged that if one was

subject all were subject, and that each would be subject pro rata. If so, a determination of the valuation and pro rata liability of each lot in a separate contest with the plaintiff would not be binding on the claimants of the other lots; and when they sought to adjust the equitable proration or contribution with each other, as between themselves the whole subject would again be open to litigation. So that the petition presents a case where the same question must be litigated by the plaintiff with each of the claimants of the land, and afterwards, if they seek an adjustment among themselves, must be again litigated among them. If this be so, and the equitable power of the court must be constantly invoked in the litigation, why should it not adjust all the controversies in one proceeding?

It is contended that while the plaintiff in execution might have appealed to the equitable powers of the court, as he did not do so, the claimants of the lots could not institute this action. In the case of *Fleishel* v. *House, 52 Ga.* 60, property on which there was a legal lien was sold in parcels, but at one time at public auction. Some of the purchasers failing to comply with the terms of sale, others subsequently took the portions bought by such purchasers so failing. The execution based on the attachment which constituted the lien was levied on the entire property. Two persons claiming lots as purchasers took an assignment and transfer of the execution and judgment from the plaintiff therein, and caused the original levy to be dismissed and a new levy to be made on two lots which had been purchased by another. He filed an equitable proceeding, praying for an injunction to restrain the sale, and to have the status of the different lots determined and the burden resting upon them respectively fixed. The trial judge denied the injunction. This ruling was reversed by the Supreme Court. The Judges of this court apparently did not entirely concur in their views as to the status of the purchasers, two of them announcing that under the circumstances stated the rule as to the discharge of a lien in the inverse order of the sale by the debtor, as among purchasers, did not apply, but that all the purchasers were bound to contribute to the discharge of the lien in proportion to the amount respectively purchased by them. All concurred, however, in the reversal and in holding that equity would determine in one proceeding the controversy between all of the purchasers. It will be noticed that while two of the purchasers had taken a transfer of

the execution and caused it to be levied upon the lot bought by another, the equitable petition was not filed by these assignees, but by the person on whose lot the levy was made, for the purpose of adjusting the status of all the lot owners and their lots, and that this was done before the complainant paid the execution or any part thereof. In his opinion Chief Justice Warner said: "But conceding that Strickland, the original judgment creditor, could have levied the execution on any separate portion of the property subject thereto in satisfaction thereof, at his pleasure, and that his assignees of the judgment, as a general rule, would stand in his shoes, with the same rights that he would have had, still, when it is apparent that all the purchasers of these subdivided lots are bound to contribute ratably to discharge the common burden resting upon the land before the subdivision and sale, the defendant, McGuire, being insolvent, why, under this state of facts, should the assignees of the judgment, who are two of the purchasers of a part of the encumbered property, be allowed temporarily to pro- tect their own property by having the execution levied on the property of other purchasers subject to the attachment lien, when those other purchasers can compel them ultimately to discharge their proportion of the common burden? In our judgment, under the facts disclosed by the record, the injunction prayed for should have been granted so as to prevent circuity of action and a multi-plicity of suits." See also, on the general subject, Civil Code, § 3320; *Cheney* v. *Rodgers,* 54 *Ga.* 168; *Caldwell* v. *Montgomery,* 8 *Ga.* 106; *Johnson* v. *Lewis,* 8 *Ga.* 462; *Justices* v. *Moreland,* 20 *Ga.* 145, 147; *Jones* v. *Parker,* 55 *Ga.* 12; *Amis* v. *Cameron,* 55 *Ga.* 451; *Wynn* v. *Bryce,* 59 *Ga.* 532; *Redd* v. *Davis,* 59 *Ga.* 826; *Jones* v. *Sikes,* 85 *Ga.* 546 (11 S. E. 664) ; *Crockett* v. *Mitchell,* 88 *Ga.* 166 (14 S. E. 118) ; *Watkins* v. *Gilmore,* 121 *Ga.* 490 (49 S. E. 598). In neither *Jones* v. *Parker,* 60 *Ga.* 500, nor *Long* v. *Mitchell,* 63 *Ga.* 769, was it alleged that the administrator was in-solvent. Here insolvency both of the executors and of the estate is alleged, as well as non-residence of the executors and the devisee. The doctrine of multiplicity of suits is clearly set forth in the Civil Code, § 4894, and in the discussions in *Smith* v. *Dobbins,* 87 *Ga.* 316 (13 S. E. 496), and *Webb* v. *Parks,* 110 *Ga.* 639, 641 (36 S. E. 70). In *Portwood* v. *Huntress,* 113 *Ga.* 815 (39 S. E. 299),

there was no question of equitable contribution or prorating of a common burden.

The fact that the petitioner and others had interposed claims, under the statute, to the levies of the execution furnishes no reason why, if the common-law procedure does not give a complete remedy, resort may not be had to equitable pleading for that purpose. Equitable pleadings in a claim case or equitable proceedings in aid of a levy or a claim are quite usual in proper cases. While the petitioner does not allege in terms that it concedes liability in equity, the facts set out in its petition, taken as true, would suffice to make a case of common burden for equitable apportionment. This is not strictly a case of legal contribution in which the rule laid down in the code is applicable, that, among two or more persons, "where all are equally bound to bear the common burden, and one has paid more than his share, he is entitled to contribution from the others." Civil Code, §3991. It is rather a case of equitable apportionment of a common burden upon different lots or owners thereof, and of requiring them in equity to contribute ratably, when such apportionment is made, to the satisfaction of the charge which is proceeding to subject the property. In *Huey* v. *Stewart,* 69 *Ga.* 769, there was no question of determining the burden which should fall upon respective lots or lot owners, and which was uncertain in amount until the value of the respective lots should be ascertained, nor any matter of multiplicity of suits. A recovery had been had against one administrator, who thereupon sought to obtain contribution from the representative of his coadministrator without paying the judgment. In that or similar cases payment would undoubtedly be necessary before seeking contribution. In *Jenkins* v. *Nolan,* 79 *Ga.* 295 (5 S. E. 34), an effort was made to file a bill of peace before a single claim had been tried, without showing any sufficient reason why the legal question could not be adjudicated in the claim case. In *Mayor* v. *Dean,* 124 *Ga.* 750 (53 S. E. 183), the mere fact that three executions based on assessments for local municipal improvements had been issued, and two of them levied on separate lots of the same person, was not alone sufficient to authorize an equitable proceeding to consolidate them on the ground of multiplicity of suits. In the case of Home Ins. Co. *v.* Virginia-Carolina Chem. Co., 109 Fed. 681, the circuit court for the district of South Carolina went fur-

ther than we find it necessary to go in this case. There suits had been brought by the same plaintiff against a number of different insurance companies on policies of insurance, and all of such suits but one had been removed to the Federal court. Two of the insurance companies filed a bill alleging, that there had been such an overvaluation of property as amounted to a fraud which avoided the policies, or at least did not bind the companies to the amount stated, under the law of South Carolina; that if the companies were liable, each was liable for a proportion only of the loss, namely as the amount of the policy of each insured bore to the total insurance, including in such total insurance insurance for which the insured was liable as a coinsurer in the event that it had failed to maintain insurance to the extent of 90 per cent. of the value of the property insured, under the terms of the policy; that it was necessary that the amount of loss should be ascertained; that the amount of insurance maintained should also be ascertained, and likewise the per cent. that such insurance bore to the value of the property insured, and the amount, if any, that the insured was liable to contribute as a coinsurer; and that if the court should hold that the complainants and the other companies were liable at all, the loss should be apportioned between each of the insurers and the insured in accordance with the terms and stipulations of their contracts as set forth. It was alleged, that, by virtue of the contracts of insurance, each insurer was interested in the liability of the other, and the liability of the assured as a coinsurer; that if these several matters were to be ascertained in 16 suits at law by different juries and on different trials, in one case one set of values might be fixed, in another another set, and in this way one insurance company might be called upon to pay its proportion in one case upon a different ratio than might be fixed in each of the other cases of the other insurers; and that this presented a case for the ascertainment of whether any liability at all existed, and, if so, then for making a common apportionment and determining the contribution which each of the insurers, including the insured, if found to be liable as a coinsurer, should make to the common loss. The insured and the other insurance companies were made parties defendant, and it was prayed that the suits upon the policies should be enjoined, and that the entire controversy be determined at once, and for other relief. That bill was sustained as against a de-

murrer, and the decision was upheld by the Circuit Court of Appeals. 113 Fed. 1 (51 C. C. A. 21). A petition was presented to the Supreme Court of the United States for a writ of certiorari, but was afterwards dismissed for want of prosecution. 189 U. S. 517 (23 Sup. Ct. 854, 47 L. ed. 926). Duplicity in pleading and multifariousness in an equitable action furnish good grounds for demurrer; but the same case may sometimes be presented in a dual aspect leading up to the same remedy, or upon an allegation of facts, in a proper case, there may be an alternative prayer without subjecting an equitable petition to demurrer on the grounds referred to. Hardin v. Boyd, 113 U. S. 756 (5 Sup. Ct. 771, 28 L. ed. 1141); Story's Eq. Pl. (10th ed.) §42; Fletcher's Eq. Pl. & Pr. §106, p. 140.

Whether or not the plaintiff in execution could have successfully contested the right of the petitioner to have enjoined him from proceeding, and to have brought the entire matter into equitable cognizance, is not before us and is not decided. But upon the case presented the presiding judge did not err in overruling the demurrers which were interposed by claimants of other lots than that held by petitioner. The two demurrants filed separate bills of exceptions, but both are controlled by the same ruling, and the judgment in each is the same.

*Judgments affirmed. All the Justices concur.*