## MILLER *et al. v.* JONES *et al.*

1. Upon the call of the appearance docket the judge may in his discretion allow counsel for the defendant a reasonable time thereafter, and during the term, to demur and answer.
2. The petition was not subject to demurrer on the ground of multifariousness.

JUNE 17, 1911.

Equitable petition. Before Judge Worrill. Early superior court. March 1, 1910.

Mrs. A. L. Miller (formerly Jones) and Nannie Jones brought an action against R. L. Jones, as executor of the will of W. D. Jones Sr., deceased, T. F. Jones Sr., T. F. Jones Jr., W. W. Beard, Emma Beard, W. B. Hattaway, and C. J. Rambo. The substance of the petition was as follows: W. D. Jones Sr. died October 14, 1905, leaving a will as follows:

"Item I. I wish that my entire estate, both real and personal, be held without division or disposition by my executor for the term of three years, that my just debts may be paid, and that my two daughters be maintained and educated from the proceeds, and that my home and family, Rob, and Jennie and Nannie Jones, be maintained and kept as they now are, except when attending school.

"Item II. I desire that as soon as it can be conveniently done, I direct my executor to pay to my wife, Carrie Jones, the sum of four hundred dollars, which amount is to be in lieu of dower and year's support.

"Item III.  I desire that at the end of the three years mentioned, any money from my estate shall be divided equally between my son, R. L. Jones, and Jennie and Nannie Jones.

"Item IV.  I desire that at the end of three years, I wish my home place, where I now live, together with all personalty, to be the absolute estate of my three children, R. L., Jennie, and Nannie, and they shall divide it as they wish.

"Item V.  I desire at the end of three years that all my interest in the Dennis place, now operated by me and my brother, Frank Jones, together with all personalty thereto, shall belong to W. D. Jones Jr., T. F. Jones Jr., and Emma Beard, which is to be divided as they desire.

"Item VI.  I desire that R. L. Jones, my youngest son, shall be the executor of this my last will and testament, taking such compensation as the law allows administrators of estates, to act without giving bond as such executor."

The will was probated in solemn form on the first Tuesday in December, 1905, and R. L. Jones qualified as executor.  For eighteen years prior to the death of the testator he and T. F. Jones Sr. (Frank) conducted as partners a farming business on the Dennis place referred to in the will, each of the partners owning an undivided half interest in the land constituting such place, and of the personalty thereon used in such business.  The testator acted as overseer or manager of the plantation at an agreed salary of $300 per year, and T. F. Jones Sr. kept the accounts and books of the business, sold the produce made thereon, collected the proceeds of the sales, and managed the financial affairs generally of the business.  A running account existed and continued between such partners, without a settlement, during the eighteen years next preceding the death of the testator, at which time T. F. Jones Sr., as surviving partner, was indebted to the testator in a large amount.  Within three years after the death of the testator and the probate of his will, W. D. Jones sold and conveyed all of his interest in all the property devised and bequeathed to him under the will to W. W. Beard.  Subsequently, on October 31, 1907, W. W. Beard, T. F. Jones Sr., and two of the older set of children mentioned in the will, viz., Emma Beard, and T. F. Jones Jr., under an agreement, made a division in kind of the Dennis place and in accordance therewith executed deeds whereby each of such

parties took the portion of the place so allotted. In November, 1907, T. F. Jones Jr. sold and conveyed to T. F. Jones Sr. all interest which the former had in the Dennis place under the will, and under the agreement above referred to. On February 14, 1908, T. F. Jones Sr. sold and conveyed the portion of the Dennis place which had been conveyed to him by T. F. Jones Jr., and certain produce from such place, to C. J. Rambo and W. B. Hattaway. All of such parties so dealing with the interest of the testator in the Dennis place went into possession of the portions thereof which they had obtained under such conveyances, and thereafter received the rents and profits thereof, and all of them had full notice, at the time of taking possession, of the rights of the plaintiffs under the will, and all of such parties confederated together and conspired with T. F. Jones Sr., in the manner above indicated, to defeat the rights of the plaintiffs in and to such of the net income, rents, issues, and profits arising from the Dennis place, as plaintiffs were, under the terms of the will, entitled to receive and enjoy for their maintenance, etc., during the period of three years from the death of the testator. At the time of the death of the testator, his individual debts aggregated $680.24, which debts were by his will made a first charge upon the income arising from his entire estate. At the time of his death and for some time prior thereto, the testator, in partnership with his son, R. L. Jones, conducted a public cotton-ginning business on the home place mentioned in the will, the debts of which partnership, at the death of the testator, amounted to $4,119.96, or other large sum. On October 19, 1907, the ginning business was completely destroyed by fire, and R. L. Jones by way of compromise collected $2,012.50 as insurance thereon, half of which amount was assets belonging to the estate of the testator, and as such passed into the hands of R. L. Jones, as executor, subject to the indebtedness of the last-mentioned partnership. In January, 1907, the dwelling on the home place mentioned in the will was also burned by fire, and R. L. Jones, as executor, collected, on an insurance policy taken out upon such dwelling for the protection and benefit of himself and plaintiffs, the sum of $1,597.00, which amount the plaintiffs charge, upon information and belief, was used by the executor in paying off debts owing by the estate of the testator and the last-mentioned partnership, instead of holding plaintiffs' two-thirds interest therein in-

trust for them and selling the personal property belonging to the estate of the testator for the purpose of paying the debts for which it was liable. The executor never called upon T. F. Jones Sr. to account for any of the personalty, consisting of live stock, farming implements, etc., used in connection with the business conducted by the testator and T. F. Jones Sr. on the Dennis place, and in which the testator owned an undivided half interest, but allowed such personalty to pass into the hands of W. W. Beard, Emma Beard, T. F. Jones Jr., C. J. Rambo, and W. B. Hattaway, as well as to remain in the hands of T. F. Jones Sr., as long as he kept control of the Dennis place, which personalty such parties converted to their own individual use and placed the same beyond the power of the executor to sell for the purpose of paying the debts due by the testator. By reason of the failure of R. L. Jones, as executor, to sell a sufficient amount of the personal property of the estate to pay off its debts, and of his failure to pay his individual indebtedness as a member of the partnership in the ginning business that existed between him and the testator, as well as by reason of the fact that such executor permitted certain described lands constituting a part of the home place, which had been specifically devised to the plaintiffs and R. L. Jones, to be sold at sheriffs' sales on April 2, 1908, and on May 6, 1908, under various executions for stated amounts in favor of different named plaintiffs against R. L. Jones, some of which were against him as executor and others against him individually and as executor, the plaintiffs' interests in the home place have been sacrificed. The value of the portions of the land of the home place sold under such executions was $5,800 or other large sum, and they were sold at forced sales, permitted and encouraged by the executor and devisees of the Dennis place and their successors in interest, in the spring of 1908 during a financial panic, and were grossly sacrificed in order to pay the debts of the estate, which inured to the benefit of the devisees under the will of the testator's interest in the Dennis place, and entirely deprived plaintiffs of their interest in the lands so sold, and defeated the scheme of their father, the testator, as expressed in his will, which was to divide his land into two equal parts, one consisting of the home place to go to the three younger children, namely the plaintiffs and R. L. Jones, and the other consisting of his interest in the Dennis place to go to his three older

children, viz., Emma Beard, W. D. Jones Jr., and T. F. Jones Jr: The executor, R. L. Jones, has collected and received, as money belonging to the estate of his testator, $6,556.39 or other large sum, for which he has not accounted to plaintiffs, and they charge on information and belief that he has paid out of such moneys on his individual debts $792.33, and on the debts due by the partnership in the ginning business $4,119.96. In the language of the petition, "The only amounts which the said executor has paid over to or in behalf of petitioners, since the death of his testator, are as follows:

March 28, 1906, to Nannie Jones, cash................$ 9.65
June    29,  "   "   "      "      "    ............... 27.50
Febry.  29,  "   "   "      "      "    ............... 121.35
Dec.     5, 1905, Tuition for Jennie Jones............ 202.50
June    23, 1906,   "    "    "     "    ............. 177.50
June    29, 1906, School expenses of Jennie Jones...... 220.00
Nov.   1907, To Jennie Jones (cash)................... 47.50
                                                     ‾‾‾‾‾‾‾‾
                                                     $806.00"

Since the 14th of October, 1908, the time fixed by the will for a division of the property of the testator's estate by his executor among the beneficiaries, the plaintiffs have called upon the executor for an accounting and settlement with them for their respective shares of the estate, but he has failed and refused to comply with their demand; he has likewise refused to come to any accounting or settlement with any of the other parties above mentioned as interested in the estate, or to bring T. F. Jones Sr. to an accounting or settlement with the estate, and therefore it is necessary that the plaintiffs themselves proceed to have such parties brought to an accounting and settlement with the estate. The prayers of the petition are : (1) That T. F. Jones Sr. be brought to an accounting and settlement with the estate, respecting the business transactions between him and the testator as to the farming operations on the Dennis place, prior to the death of the testator, as well as the interest of the estate in all the personalty used in connection with such business prior to the testator's death, as well as for the rents, issues, and profits received by him from the interest owned by the estate in the Dennis place since the death of the testator. (2) That T. F. Jones Jr., W. W. Beard, Emma Beard, W. B. Hattaway, and C. J. Rambo each be required to come to an account-

ing and settlement with the estate, respecting the rents, issues, and profits' arising from the interest of the estate in the Dennis place, received by them since the death of the testator, as well as for such of the personal property connected with such plantation as they or any of them may have received and used since such date. (3) "That the said T. F. Jones Jr., W. W. Beard, Emma Beard, and R. L. Jones may be decreed to come to a full, just, and complete accounting and settlement with your petitioners as to the respective share of the debts of said estate which each of them should share, as a condition precedent to taking any of the benefits under the will of the said W. D. Jones Sr.; and that the share of each of them in such debts shall, when ascertained by such accounting, be decreed to be a charge upon the interest of said estate in the Dennis place, and that said interest in said plantation be sold for the purpose of making a just and fair division amongst the beneficiaries of said will (or their assignees), in accord with its scheme and purpose, of the monies arising from all of the assets of said estate and remaining after discharging all of the debts of said estate." (4) That Beard, Hattaway, and Rambo, in so far as their claim of interest in the Dennis place is concerned, be decreed to stand in the shoes of the devisees named in the will, through whom they claim directly or indirectly. (5) That in the accounting and settlement with the estate the plaintiffs be decreed to be entitled to a credit of two thirds of the amount collected as insurance on the dwelling destroyed on the home place, and two thirds of a half interest in the insurance collected on the ginning outfit, and that the plaintiffs be further credited with two thirds of the value of the lands forming a part of the home place which were sold under execution sales for the purpose of paying the debts of the estate. (6) That the executor be brought to an accounting with the plaintiffs respecting all of the assets of the estate which have come into his hands since his qualification, and that he be decreed to have forfeited the right to commissions as executor on account of the misapplication of the assets of the estate as before stated. (7) That the agreement between T. F. Jones Sr. and T. F. Jones Jr., on the one side, and W. W. Beard and Emma Beard on the other, by which they undertook to divide in kind the Dennis place, be set aside and decreed to be inoperative in so far as the plaintiffs and other parties are concerned. (8) For general relief and process.

28

During the appearance term the trial judge announced that he would call the appearance docket on the succeeding day. When, in accordance with such announcement, the present case was called in its order, counsel for the defendants who had been served announced that he had been actively engaged in court all the preceding week and had not had time to prepare and file defenses in their behalf, and asked for time within which to file such defenses. The court thereupon allowed him until the last day of the term to file them. This permission was given on April 13, 1909. Two days thereafter counsel for such defendants filed a joint demurrer and answer in their behalf. Counsel for the plaintiffs urged the court, when the case was called in its order upon the appearance docket, to enter the same as in default; and subsequently objected to the filing of the demurrer and answer of the defendants, on the ground that the case was in default when called upon the appearance docket. The objection was overruled, and the demurrer and answer allowed to be filed on April 15, 1909. Exceptions pendente lite were filed by the plaintiffs, assigning error upon the ruling of the judge as to this matter. The remaining defendants at the October term, 1909, which was the appearance term as to them, filed demurrers and answers. The court sustained a common ground of demurrer of all of the defendants, attacking the petition for multifariousness. Plaintiffs excepted, assigning error upon their exceptions pendente lite, and upon the sustaining of the demurrer.

*A. L. Miller* and *Glessner & Park,* for plaintiffs.

*Hawes & Pottle, King & Castellow, Byron R. Collins,* and *Charles D. Russell,* for defendants.

FISH, C. J. (After stating the foregoing facts.)

1. Upon the call of the appearance docket the judge may in his discretion allow counsel for the defendant a reasonable time thereafter and during the term, to demur and answer. There was no abuse of the judge's discretion in this case in allowing counsel, for the reasons set out in the statement of facts, two days after the call of the appearance docket in which to demur and answer. In *Deering Harvester Co.* v. *Thompson,* 116 *Ga.* 418 (42 S. E. 772), the order held to be invalid allowed the defendant until a date after the adjournment of the appearance term within which to file an answer.

2. The demurrer sustained by the court was that the petition

was bad for multifariousness, because: (1) it sought an accounting with the executor, with which neither the other defendants nor any one of them had any connection or concern; (2) it prayed for an accounting with T. F. Jones Sr., as the surviving partner of a business conducted by him and the testator during the latter's life, as well as for an accounting of business transactions T. F. Jones Sr. had with the testator, with neither of which accountings were any of the other defendants concerned; (3) it sought an accounting with and a contribution from "W. W. Beard, Emma Beard, and others, in reference to the indebtedness of the estate of W. D. Jones, 'and with such cause of action" the other defendants had no connection or concern; and (4) because "the only cause of action attempted to be set forth in said petition against W. B. Hattaway and C. J. Rambo is for an accounting and contribution in reference to the portion of the plantation known as the Dennis place, and the petition shows on its face that these defendants acquired title to said land from T. F. Jones Sr., and have absolutely no connection or concern with or interest in any other of the matters or things or causes of action set forth in the petition."

"To sustain a bill against the charge of multifariousness, it is not indispensable that all the parties should have an interest in all the matters contained in the suit. It is sufficient, if each party has an interest in some matter in the suit, which is common to all, and they are connected with others." *Worthy* v. *Johnson*, 8 *Ga.* 236 (52 Am. D. 399). "Where the plaintiffs have a common interest against all of the defendants in a suit as to one or more of the questions raised by it, so as to make them all necessary parties for the purpose of enforcing that common interest, the circumstance of some of the defendants being subject to distinct liabilities in respect to different branches of the subject-matter will not render the bill multifarious." *City Bank of Macon* v. *Bartlett,* 71 *Ga.* 798. "Where all the complainants belonged to the same class and had a common interest, and all the defendants belonged to one class and were subject to a common liability, it does not matter that the extent of the rights of each of the complainants, or the liability of each of the defendants, may not be the same." Ib. A petition is not multifarious though it concerns things of different natures against several defendants, whose rights are distinct, if it sets forth one connected interest among them all, centering in the point

in issue in the case. *Conley* v. *Buck,* 100 *Ga.* 187 (28 S. E. 97); *Greer* v. *Andrew,* 133 *Ga.* 193 (65 S. E. 416). Did the petition in the case now in hand set forth a common interest which the plaintiffs had against all of the defendants as to any question raised, so as to make them all necessary parties for the purpose of enforcing that common interest? Before replying to this inquiry it becomes necessary to construe the will involved in this case. The natural and reasonable presumption is that a testator when he executes his will intends to dispose of his whole estate and does not intend to die intestate as to any part of his property, which presumption is overcome only where the intention of the testator to do otherwise is plain and unambiguous or is necessarily implied. *Black* v. *Nolan,* 132 *Ga.* 452 (64 S. E. 647). Moreover, it is clear, we think, from the will itself in this case, that the testator intended to dispose of his whole estate; for in the first item thereof he declares that "I wish that my entire estate, both real and personal, be held without division or disposition by my executor for the term of three years, that my just debts may be paid, and that my two daughters be maintained and educated from the proceeds, and that my home and family, Rob, and Jennie and Nannie Jones, be maintained and kept as they now are, except when attending school." It is apparent that the testator desired his entire estate to be kept together for three years in order that his executor might discharge from the income thereof the debts against the estate, and from the same source defray the expenses of the maintenance and education of his two younger daughters, the plaintiffs, and the maintenance of his family, consisting of his three younger children, R. L. Jones and the plaintiffs, and also from the same source that the executor, as soon as it could "be conveniently done," should pay to the testator's widow a given sum in lieu of dower and a year's support, as provided for in the second item of the will. The only property mentioned in and disposed of by the will was the interest of the testator in two places or plantations and the personalty on each and used in connection therewith. In one of these places, known as the home place, and in the personalty thereon the testator owned the entire interest, all of which at the end of three years was "to be the absolute estate" of his three children, R. L. Jones and the plaintiffs, who should then divide it amongst themselves. In the other lands, known as the Dennis place, and in the

personalty thereon and used in connection therewith, the testator owned a half undivided interest. In reference to this property the testator declared in the fifth item of his will as follows: "I desire at the end of three years that all my interest in the Dennis place, now operated by me and my brother Frank Jones, together with all personalty thereto, shall belong to W. D. Jones Jr., T. F. Jones Jr., and Emma Beard, which is to be divided as they desire." It appears from the petition that the persons named in the fifth item were an older set of children of the testator, and that the persons named in the fourth item, to whom was given the home place and the personalty thereon, were the younger set of the testator's children. After providing that his entire estate should be kept together for the term of three years and that the income thereof should be devoted to certain specified purposes as already indicated, the testator declared in the third item of his will that "I desire that at the end of the three years mentioned, any money from my estate shall be divided equally between my son, R. L. Jones, and Jennie and Nannie Jones." Construing the testamentary scheme as ascertained from the entire will and also the connection in which the language of the third item is used, and the language itself as there employed, we feel safe in saying that the intention of the testator was that at the end of three years "any money from [his] estate"—that is, any balance of the income, such as rents and profits belonging to the estate from the two plantations—should be equally divided between the three younger children named in the third item. At the end of the three years the corpus of the estate was to go to the children, the home place including the personalty thereon to the younger set and all the "interest" in the Dennis place, including all personalty thereon to the older set. The words "all my interest in the Dennis place" as used in the fifth item of the will referred, we think, not merely to his half undivided interest in the land constituting that place and to a like interest in the personalty thereon, but also included whatever interest he might have in the business enterprise conducted by himself and T. F. Jones Sr., as partners in connection with such place, and therefore covered any indebtedness in the way of profits, wages, etc., owing by the partnership to the testator at the time of his death.

Having set forth the real testamentary scheme of the will, does

it follow that the plaintiffs under the allegations of their petition had a common interest as to some matter in the suit which was common to all of the defendants, and in which the latter were all interested in resisting? In our opinion the petition showed that the plaintiffs had such an interest. In effect, the plaintiffs alleged, that under the terms of the will they were to be maintained and educated out of the income from the entire estate during the period of three years after the testator's death; that the executor failed to carry out this obligation placed upon him by the will; that he permitted the other defendants to go into possession of the land and personalty constituting the "interest" of the testator in the Dennis place, and to receive and appropriate to their own uses the income and profits of such property during the three years the executor was bound to hold the same together and to devote the income therefrom in part to the maintenance and education of the plaintiffs; and that at the expiration of the three years the plaintiffs were entitled to two thirds of any money that should then have been in the hands of the executor from the income of the Dennis place. Surely the plaintiffs had the right to call the executor to an accounting and settlement in reference to this matter, as well as to all other matters in respect to which they claimed he had mismanaged his trust; and if the other defendants had appropriated, with notice of the plaintiffs' rights under the will, to their own uses any portion of the income belonging to the estate which should have come into the hands of the executor from the Dennis place during the three years after the death of the testator, and if the executor failed and refused to require the other defendants to account to him for such income appropriated by them, then the plaintiffs were entitled to bring an action against the other defendants for an accounting and settlement as to such income received and appropriated by them, and to make the executor a codefendant in such action. *Worthy* v. *Johnson*, 8 *Ga.* 236 (52 Am. D. 399).

Moreover, as we have seen, the scheme of the will was that the entire estate should be kept together by the executor for the term of three years before the division thereof, as provided in the will, should be made, and in the meantime the debts of the testator, as well as the money to be paid to his widow and the expenses of maintenance and education of the plaintiffs, should all be paid from

the income derived from the entire estate. Of course all of the property of the estate was liable for the testator's debts, and creditors with executions could proceed against any of it. If the executor failed to pay the debts owing by the estate from the income thereof, and execution creditors had lands constituting a portion of the home place levied upon and sold to satisfy their debts, then the plaintiffs, to whom had been specifically devised a two-thirds interest in the lands of the home place, would have the right to require contribution from the devisees to whom had been specifically devised the testator's "interest" in the lands constituting the Dennis place, as well as from those holding under such last named devisees with notice of the plaintiffs' rights as to this matter. 2 Jarman on Wills (6th ed.), 2031; 37 Cyc. 392; 27 A. & E. Enc. Law, 251; *Compton* v. *Pitman,* 49 *Ga.* 612; *Jones* v. *Sykes,* 85 *Ga.* 546 (11 S. E. 664) ; Civil Code (1910), § 4588.

It was proper to have the alleged pro rata liability of each of the defendant devisees of the Dennis place and the defendants holding under them determined in one action. See *Chamblee* v. *Atlanta Brewing & Ice Co.,* 131 *Ga.* 554 (62 S. E. 1032). As was well said by Mr. Justice Warner in the case of *Nail* v. *Mobley,* 9 *Ga.* 278, "It is the interest of parties, as well as the interest of the public, that all matters in controversy between them should be settled in one suit, when it can be done with safety and without great practical inconvenience."

We have decided the only points necessary to dispose of the question as to whether or not the petition was multifarious, and with confidence have arrived at the conclusion that it was not; and therefore the judgment of the lower court must be

*Reversed. All the Justices concur.*