M. E. BOULDIN *et al. v.* MRS. CORDELIA A. TAYLOR *et al.*[*]
A. D. CLARK & CO. *v.* MRS. CORDELIA A. TAYLOR.

(*Nashville.* December Term, 1924.)

1. **ACTION.** Order, consolidating several equity suits, does not make pleadings and depositions in one suit part of another.

.Order, consolidating several equity suits, does not make the pleadings and depositions in one suit a part of another, since rights of litigants must still turn on pleadings, proof, and proceedings of their respective suits. (*Post, pp.* 130-132.)

Cases cited and approved: Burnham v. Dalling, 16 N. J. Eq., 310; Beach v. Woodyard, 5 W. Va., 231; Patterson v. Eakin, 87 Va., 49; Keighley v. Brown, 16 Ves., 344; Woodburn v. Woodburn, 123 Ill., 608; Portwood v. Huntress, 113 Ga., 815; India Rubber Co. v. C. J. Smith & Sons Co., 75 Ill. App., 223; Oldfather v. Zent, 11 Ind. App., 430; Knight v. Ogden, 3 Tenn. Ch., 409; Claiborne v. Gross, 7 Leigh (Va.), 331; Forman v. Blake, 7 Price, 654; Ogburn v. Dunlap, 77 Tenn., 162; Toledo, St. L. & K. C. R. Co. v. Continental Trust Co., 95 F., 497; Viele v. Germania Ins. Co., 26 Iowa, 9; Biron v. Edwards, 77 Wis., 477; Thielman v. Carr, 75 Ill., 385; Cox Shoe Co. v. Adams, 105 Iowa, 402; Russell v. Chicago Trust & Savings Bank, 139 Ill., 538; Moore's Admr. v. Francis, 17 Tex., 28; Biron v. Edwards, 77 Wis., 477; Monroe v. Lewald, 107 N. C., 655; Hayward v. Mason, 54 Wash., 653; Peterson v. Dillon, 27 Wash., 78; Wyatt v. Thompson, 10 W. Va., 645; Foxwell v. Webster, 4 De Gex J. & S., 77; Davis v. Davis, 48 L. J. Ch., 40; Scott v. Allgood, 1 Fowler Ex. Pr., 81; Le Jeune v. Sheridan, For. Ex., 31; Foreman v. Southwood, 8 Price, 575; The Warden and Fellows of Manchester College v. Isherwood, 2 Sim., 476; Cumming v. Slater, 1 Y. & C. C. C., 484; 152 Tenn.—7.

Bouldin v. Taylor.

Godfrey v. Maw, 2 Sim., 485; Wendell v. Wendell, 3 Paige (N. Y.), 509; Clason v. Church, 1 Johns. Cas., 29; Brevard v. Summar, 49 Tenn., 105; Lofland v. Coward, 59 Tenn., 546; Randolph v. Merchants Nat. Bank, 77 Tenn., 63; Comfort v. McTeer, 75 Tenn., 652; Hatcher v. Royster, 82 Tenn., 222; Brevard v. Summar, 49 Tenn., 97; Mowry v. Davenport, 74 Tenn., 80; Holmes & Co. v. U. S. Fire Ins. Co., 142 F., 863; Handley v. Sprinkle, 31 Mont., 57.

Cases cited and distinguished: Biron v. Edwards, 77 Wis., 477; Burnham et ux. v. Dalling, 16 N. J. Eq., 310; Executors of Conover v. Conover, 1 N. J. Eq., 412; Beach v. Woodyard, 5 W. Va., 231; Patterson v. Eakin, 12 S. E. 144; India Rubber Co. v. C. J. Smith & Sons Co., 75 Ill. App., 222; Smith v. Smith, 22 Colo., 480; Springer v. Kroeschell, 161 Ill., 358; Moore v. Francis, 17 Tex., 28; Ogburn v. Dunlap, 77 Tenn., 162; Masson v. Anderson, 62 Tenn., 290; Toledo, etc., Ry. Co. v. Continental Trust Co., 95 F., 497.

2, **EJECTMENT.** Bills, if regarded as ejectment bills, would be essentially actions at law but if constituting bills to remove cloud from title, would be of equitable cognizance.

In ejectment, bills, if regarded as ejectment bills, would be essentially actions at law and would fall under statutory jurisdiction conferred on chancery courts by Acts 1877, chapter 97, but if constituting in reality bills to remove cloud from title, they would fall under the *quia timet* jurisdiction of the court, and be purely of equitable cognizance. (*Post, pp.* 132, 133.)

Acts cited and construed: Acts 1877, ch. 97.

Cases cited and approved: Walsh v. Crook, 91 Tenn., 389; Buck v. Williams, 58 Tenn., 264; Almony v. Hicks, 40 Tenn., 39; Coal & Lumber Co. v. Patton, 134 Tenn., 556.

3. **QUIETING TITLE.** Possession of land decreed as incidental relief to remove cloud on title.

In bill to remove a cloud on title, possession of land is decreed as incidental relief. (*Post, p.* 133.)

Acts cited and construed: Acts 1851-52, ch. 152, sec. 2.

Bouldin v. Taylor.

Cases cited and approved: Ross v. Scott & Russell, 83 Tenn., 479; Coal Creek Mining & Mfg. Co. v. Ross, 80 Tenn., 1.

Code cited and construed: Sec. 4970(S.).

4. **COURTS.** Suits held properly appealed to supreme court as ''ejectment suits'' within meaning of statute.

Ejectment suits, under Shannon's Code, section 4970 (Acts 1851-52, chapter 152, section 2), with bills specifically praying that possession of the land be decreed to complainant, and in one bill writs of possession being sought to put complainant into full and peaceable possession of the land, were properly appealed to supreme court, as "ejectment suits" within Acts 1895, chapter 76, Acts 1907, chapter 82, apportioning jurisdiction between the supreme court and court of civil appeals, since changed by Pub. Acts 1925, chapter 100. (*Post, pp.* 133, 134.)

Acts cited and construed: Acts 1851-52, ch. 152, sec. 2; Acts 1895, ch. 76; Acts 1907, ch. 82; Acts 1925, ch. 100.

5. **ACTION.** Chancellor erred in consolidating ejectment suits in invitum, and in allowing proof taken in one cause to be read in the other, and in failing to make separate decrees therein.

In ejectment suits, chancellor erred in consolidating the causes *in invitum*, and in allowing proof taken in one cause to be read in the *other*, and in failing to make separate decrees therein, where suits were of equitable cognizance rather than mere actions at law, in that they involved equitable remedies of cancellation, injunction and removing cloud from title, and two bills showed that different bodies of land were described, and different titles set up, and disputed questions of fact arose in each case, and consolidation resulted in considerable delay. (*Post, pp.* 134-136.)

Case cited and approved: Clement v. Clement, 113 Tenn., 40.

6. **CORPORATIONS.** Foreign corporation held entitled to sue in ejectment without compliance with state law as to registration of charter.

Foreign corporation *held* entitled to bring suits in ejectment concerning lands situated within the state which it claimed to own, with-

out having complied with the State law as to registration of its charter, etc. (*Post, p.* 136.)

Acts cited and construed: Acts 1895, ch. 81, sec. 2; Acts 1891, ch. 122, sec. 3.

Cases cited and approved: Louisville Property Co. v. Mayor & City Council of Nashville, 114 Tenn., 213; Frankfort Land Co. v. Hughett, 137 Tenn., 32.

Case cited and distinguished: Louisville Property Co. v. Mayor & City Council of Nashville, 114 Tenn., 213.

Constitution cited and construed: Art. 2, sec. 17.

7. **STATUTES.** Statute held not unconstitutional in that caption did not state substance of act amended.

Acts 1895, chapter 81, section 2, making it unlawful for any foreign corporation to do business within State without having first complied with its provisions, amending Acts 1891, chapter 122, section 3, *held* not violative of Constitution, article 2, section 16, in that caption did not state substance of act amended. (*Post, p.* 138.)

Acts cited and construed: Acts 1895, ch. 81, sec. 2; Acts 1891, ch. 122, sec. 3.

Constitution cited and construed: Art. 2, sec. 16.

8. **CORPORATIONS.** When foreign corporation ''doing business within state'' within statute stated.

A foreign corporation is "doing business within State" within meaning of Acts 1891, chapter 122, section 3, as amended by Acts 1895, chapter 81, section 2, when it transacts therein some substantial part of its ordinary business continuous in character as distinguished from mere casual or occasional transactions. (*Post, p.* 138.)

Case cited and approved: Amusement Co. v. Albert, 128 Tenn., 417.

9. **CORPORATIONS.** Whether foreign corporation is transacting business within the State primarily question of fact.

Whether a foreign corporation is transacting business within the State within meaning of Acts 1891, chapter 122, section 3, as

Bouldin v. Taylor.

amended by Acts 1895, chapter 81, section 2, is primarily a question of fact. (*Post, pp.* 138, 139.)

Acts cited and construed: Acts 1891, ch. 122, sec. 3; Acts 1895, ch. 81, sec. 2.

Case cited and approved: Shea v. Mabey, 69 Tenn., 319.

10. **APPEAL AND ERROR.** Appeal in suits of ejectment, involving equitable cognizance, brought cases up de novo.

An appeal in suits of ejectment, involving equitable cognizance rather than mere actions at law, brought the causes up *de novo.* (*Post, pp.* 139, 140.)

Acts cited and construed: Acts 1925, ch. 100.

Case cited and approved: Sartain v. Dixie Coal & Iron Co., 150 Tenn., 633.

---

*Headnotes 1. Actions, 1 C. J., Sections 354, 355; 2. Ejectment, 19 C. J., Section 4; 3. Quieting Title, 32 Cyc., p. 1381; 4. Courts, 15 C. J., Section 553; 5. Actions, 1 C. J., Section 313; 6. Corporations, 14a C. J., Section 4063; 7. Statutes, 36 Cyc., p. 1049; 8. Corporations, 14a C. J., Section 3979; 9. Corporations, 14a C. J., Section 4078; 10. Appeal and Error, 4 C. J., Section 2647.

---

FROM GRUNDY.

---

Appeal from the Chancery Court of Grundy County. —Hon. T. L. STEWART, Chancellor.

JEFF FULTS, for complainant.

C. H. GARNER and W. C. ABERNATHY, for defendant.

MR. MALONE, Special Judge, delivered the opinion of the Court.

These were ejectment bills, consolidated and heard together in the court below. The chancellor gave a decree, awarding to the complainant, A. D. Clark & Co., the land in question. The defendant Mrs. Cordelia A. Taylor has appealed to this court.

A. D. Clark & Co., a foreign corporation, claimed the ownership of two tracts of mountain land in Grundy county, Tenn. On the interlap of these tracts (as complainant claims) was a small house or cabin. For some time prior to the year 1913, this cabin had been under the control of an agent of the defendant Mrs. Taylor. In March, 1913, Gordon Northcutt, an employee of the complainant, A. D. Clark & Co., took possession of this house, and added other improvements, holding on behalf of the complainant. It is claimed by complainant that the house was then standing open, vacant, disused, and out of repair. On behalf of Mrs. Taylor, it is claimed that the cabin was locked, with the key in her agent's possession, and that Northcutt broke the lock, and thus forcibly entered the premises.

Thereafter, in the first part of July, 1913, Mrs. Taylor instituted an action of forcible and unlawful entry and detainer, before T. B. Roddy, a justice of the peace of Grundy county, against A. D. Clark & Co., and Gordon Northcutt and John Barker, its employees. The process in the case was served only on Northcutt and Barker. A judgment by default was entered against them, and by the terms of this judgment Mrs. Taylor was awarded possession of the improvements and a tract of some one thousand one hundred acres of land on which the improvements stood, which was described in the detainer warrant.

A. D. Clark & Co., then took the case to the circuit court of Grundy county, by *certiorari,* but on motion of Mrs. Taylor their petition was dismissed.

Thereupon, on July 14, 1913, the original bill was filed in the chancery court at Altamont, in the case of *M. E. Bouldin et al.* v. *Cordelia A. Taylor et al.*

A. D. Clark & Co. had purchased this land from the heirs of J. E. Bouldin, and these heirs were made cocomplainants, apparently for the purpose of avoiding the champerty law.

The defendants to the suit were Mrs. Cordelia A. Taylor, who claimed the one thousand one hundred acres, as aforesaid, T. B. Roddy, the justice of the peace who had tried the detainer's suit, and Elijah Shrum, sheriff of Grundy county.

The bill sought a recovery of two tracts therein described by metes and bounds, and to enjoin the defendant Roddy from issuing, and the defendant Shrum from executing, the writ of possession in favor of Mrs. Taylor.

The bill was answered only by Mrs. Taylor, who was the real party in interest. In her answer she claimed ownership of the one thousand one hundred-acre tract described in her detainer suit, and disclaimed title to all other lands sued for in the bill.

She also claimed adverse possession of this one thousand one hundred-acre tract, and pleaded the statute of limitation of seven years.

She further pleaded outstanding title.

A considerable amount of proof was taken under these pleadings, and the case heard by the Honorable V. C. Allen, then chancellor for this division of the State.

In December, 1914, Chancellor Allen handed down a written opinion in the case, holding, in substance:

(a)   That complainant, Clark & Co., and defendant Mrs. Taylor both claimed the land in question under one J. M. Riley—the complainant claiming through a chain of title established by mesne conveyance and descent cast —the defendant through a tax proceeding under which the land was sold as the property of Riley.

(b)   That both parties, for these reasons, were es· topped to question J. M. Riley's title, and that the defendant Mrs. Taylor was estopped to rely on the defense of outstanding title.

(c)   That complainant showed a paper title, authorizing a decree in its favor, unless defeated either by adverse possession or by the tax title above mentioned.

(d)   That defendant Mrs. Taylor, under the proof, had failed to make out the defense of seven years' adverse possession.

(e)   That the tax deed, which merely described the land assessed to J. M. Riley as "two thousand five hundred acres including the falls of Collins river and also including the place known as Riley's mill seat," was void for want of a sufficient description.

(f)   That the tax deed should accordingly be canceled, and complainant recover the land as prayed in the bill.

A final decree was drawn by counsel for complainant in accordance with this opinion, and mailed to counsel for defendant. This decree was retained by counsel for the defendant Mrs. Taylor, and on February 15, 1915, he filed an elaborate petition to rehear. Before action on this petition was had, and before the decree which had been drawn was entered, Chancellor Allen died. His

death occurred about the last of February, or the first of March, 1915.

Mr. Mercer, who was then one of the solicitors for complainant, Clark & Co., was appointed to succeed Chancellor Allen. He was, of course, incompetent to make any order in the case, and nothing appears to have been done for some months, except that in May, 1915, the case was transferred, by consent of parties, from the chancery court at Altamont to the chancery court at Tracy City.

In 1916, Chancellor Stewart succeeded Chancellor Mercer. A petition was filed before him on behalf of the complainant, A. O. Clark & Co., seeking to have the decree, which had been drawn in accordance with Chancellor Allen's opinion, entered *nunc pro tunc*. It appears that this decree had been conditionally approved by Chancellor Allen, who directed, however, that the same be shown to counsel for the defendant Mrs. Taylor before it was entered. Issues were made up under this petition, and proof taken, and the matter heard by Chancellor Stewart, who, in November, 1918, denied the petition, and remanded the case to the rules for additional proof, if the parties desired to take it.

Pending these proceedings, and in the year 1917, the complainant, A. D. Clark & Co., bought up certain outstanding titles on which the defendant Mrs. Taylor had relied in the original trial before Chancellor Allen; but fearing that this purchase *pendente lite* would not avail it in the new trial before Chancellor Stewart, another bill was filed in April, 1919, by A. D. Clark & Co., as the sole complainant, against Mrs. Taylor, as sole defendant.

This is the suit of A. D. Clark & Co. v. Cordelia A. Taylor.

In this bill, the complainant described three additional tracts of land, to which it was alleged the defendant Mrs. Taylor was wrongfully claiming title.

The various proceedings had in the other case were described at length.

It was then alleged that in 1917, while that cause was pending on the petition above mentioned, complainant acquired, by purchase, the title to the three new boundaries described in the bill, and that complainant now claims title to these three boundaries of land from sources of title entirely independent of the sources through which it claimed ownership of the land described in the original bill.

It is alleged that the only defense made to the original bill was that the boundaries in question (purchased *pendente lite*) constituted outstanding titles.

It is further alleged that: "Complainant is advised that it cannot rely on its after-acquired titles to the three tracts or boundaries of land in said original suit No. 1170, under the holding of the supreme court of this State, and in order to get the benefit of its after-acquired title as well as the benefit of the title it owned to the land described in its original bill, No. 1170, this bill is filed as an original bill.

"Complainant is advised and alleges that all the proof taken by both parties on the merits in said cause No. 1170 would be applicable to this cause, and all the proof that may be taken in this cause by either party on the merits would likewise be applicable to said cause No. 1170. That the same boundary of land is in litigation

in this cause as in cause No. 1170 and the parties on both sides are represented by the same solicitors. Complainant therefore avers that this cause should be consolidated with said cause No. 1170, and that they should be heard together as one suit."

The bill contained an appropriate prayer in this behalf, and sought the same relief asked under the original bill.

The defendant Mrs. Taylor filed a full answer to the bill, reiterating the defenses in her original answer, and denying the right of the complainant to have the causes consolidated, or to have proof taken in one case considered in the other.

Thereafter (the exact date of the order not appearing in the record), the two causes were, on motion of complainant, consolidated. The defendant Mrs. Taylor excepted to this action of the chancellor, "for the reason that said motion comes too late, cause No. 1170 having been filed in 1913, and prepared for trial long since in so far as defendant is concerned."

A considerable amount of additional proof was taken, and the causes were heard together by Chancellor Stewart in November, 1920. On the trial of the cases, the defendant Mrs. Taylor excepted to the action of the court in permitting depositions taken in one of the consolidated causes to be read in the other.

Chancellor Stewart entered a final decree, awarding the disputed land to complainant, with the exception of the overlap thereon by what is known as the "Swiss Colony lands," adjudging that the claim of the defendant Mrs. Taylor should be removed as a cloud on complainant's title, and making perpetual the injunction

prayed in the bills. From this decree, Mrs. Taylor has appealed.

The foregoing is merely a brief outline of the litigation, without stating the many complex and troublesome questions presented for decision by this voluminous record, and the briefs and arguments of counsel.

While we have carefully read the briefs and the entire record and given consideration to the various contentions advanced by able counsel, we shall discuss only those matters which are deemed determinative.

I. Did the chancellor err in consolidating the two suits over the repeated objections of the defendants?

The objections of the defendant Mrs. Taylor, in this behalf, are not to be lightly brushed aside.

(1) The question raised by these objections has been a doubtful one from the early days of the English chancery court, and the decisions in this country are conflicting.

(a) In his excellent treatise on Equity Pleading and Practice, Mr. Fletcher says:

"There is considerable confusion concerning the right of courts of equity to consolidate causes pending therein, without the consent of the parties, or certain of the parties, to such causes. In some jurisdictions it is held that the question is purely one of practice, and that courts of equity have inherent power, in their discretion, to consolidate causes pending therein for the purpose of avoiding multiplicity of suits and trials, where the consolidation can work no injury to any party, and that the power is essential to the proper administration of justice, and does not depend upon any statute for its exercise. By other cases it is held that, because the books

of equity practice were entirely silent on the subject of consolidation of causes in courts of equity, it may be fairly inferred that no such practice existed, and consequently it is said that a court of chancery has no power to consolidate independent suits, contrary to the wishes of the parties." Fletcher, Equity Pleading, section 455.

As upholding the power to consolidate *in invitum,* Mr. Fletcher cites the following cases: *Biron* v. *Edwards,* 77 Wis., 477, 46 N. W., 813; *Burnham* v. *Dalling,* 16 N. J. Eq., 310; *Beach* v. *Woodyard,* 5 W. Va., 231; *Patterson* v. *Eakin,* 87 Va., 49, 12 S. E., 144; *Keighley* v. *Brown,* 16 Ves., 344; *Woodburn* v. *Woodburn,* 123 Ill., 608, 14 N. E., 58, 16 N. E., 209; *Portwood* v. *Huntress,* 113 Ga., 815, 39 S. E., 299; *India Rubber Co.* v. *C. J. Smith & Sons Co.,* 75 Ill. App., 223; *Oldfather* v. *Zent,* 11 Ind. App., 430, 39 N. E., 221.

As denying the power, he cites: *Knight* v. *Ogden,* 3 Tenn. Ch., 409; *Claiborne* v. *Gross,* 7 Leigh (Va.), 331; *Forman* v. *Blake,* 7 Price, 654; *Ogburn* v. *Dunlap,* 9 Lea (Tenn.), 162. See *Toledo, St. L. & K. C. R. Co.* v. *Continental Trust Co.,* 95 Fed., 497, 36 C. C. A., 155.

In *Biron* v. *Edwards* (1890), 77 Wis., 477, 46 N. W., 813, four suits in equity, brought by heirs, seeking separately to charge the administrator, a business partner of their ancestor, with the profits of lands belonging to the estate, were consolidated.

Conceding that the court below might have dismissed three of the suits, and brought all of the parties into the fourth, or might have stayed proceedings in three of the suits, it was then said at page 485 (46 N. W., 814):

"But we do not think the consolidation is irregular. We cannot doubt that the power inheres in a court of

equity, in its discretion, to consolidate causes pending therein for the purpose of avoiding a multiplicity of suits and trials, when the consolidation can work no injury to any party. This power is essential to the proper administration of justice, and does not depend upon any statute for its existence."

It appears, however, from the next page of the opinion, that there was a statute authorizing consolidation, in these words: "When two or more actions are pending in the same court which might have been joined, the court, or a judge, on motion, shall, if no sufficient cause be shown to the contrary, consolidate them into one by order."

After quoting this statute, the court continues, page 486 (46 N. W., 814): "Every condition of the statute is here present. We have two or more actions pending in the same court which might have been joined. A motion is made to consolidate them into one action, and no sufficient cause has been shown to the contrary."

In view of this express decision that the cause was governed by the statute, the views expressed as to the power of a court of equity to consolidate, independent of statute, may well be regarded as *dictum*.

*Burnham et ux.* v. *Dalling* (1863), 1 C. E. Green, 16 N. J. Eq., 310, was a similar case.

Separate bills were brought by each of three children against their guardian for an accounting. A decree was made in each case that the defendant should account. A motion was then made by complainants to consolidate.

After stating (page 311) that "books of equity practice are silent on the subject," and after reviewing certain English cases, the chancellor says at page 312:

"Of the power of a court of equity to consolidate actions, with or without the consent of complainants, I entertain no doubt. It seems to me to be a power over the conduct of suitors, resting upon the clearest principles, and absolutely essential to prevent scandalous abuses, and to protect defendants against gross oppression."

But this, as pointed out by Chancellor Cooper, in *Knight* v. *Ogden* (1877), 3 Tenn. Ch., 409, 412, was really a *dictum*—for the order of consolidation had been made by consent.

Thus, after reviewing the case of *Executors of Conover* v. *Conover,* 1 N. J. Eq., 412, Chancellor Green continues (page 312) : "In that case, as in this, as the suit was in reality by different complainants, there might have been serious objections to consolidating without consent. As a written consent to the order of consolidation is filed in this case, there can be no difficulty on that point."

In *Beach* v. *Woodyard* (1872)), 5 W. Va., 231, the lower court had refused to consolidate two equity suits brought by different plaintiffs to subject different funds of the defendant, and its action on this point was affirmed by the supreme court. It was said, *arguendo,* by MOORE, J., at page 232 : "I am of opinion that where the parties are the same, and separate suits have been brought in equity upon matters which should have been united in one suit, and the defense is the same in all, a consolidation rule ought to be granted; for, otherwise, the defendant would be oppressed, if not ruined, by an unnecessary accumulation of costs."

In *Patterson* v. *Eakin et al.* (1890), 87 Va., 49, 12 S. E., 144, it was held that the trial court properly consolidated two suits in equity, brought by different plaintiffs, "sub-

stantially against the same defendants," where the suits were "to a certain extent for a common object," viz: The administration of a decedent's estate—one being a creditor's suit, and the other praying for a settlement of the estate after the debts are paid.

The court apparently overrules, or at least makes no attempt to distinguish its own previous decision n *Claiborne* v. *Gross* (1836), 7 Leigh (Va.), 331, in which CARR, J., delivered a learned opinion, holding such a consolidation unauthorized—an opinion which is extensively quoted in 4 Encyclopedia Pleading & Practice, 689, note, without mentioning *Patterson* v. *Eakin*, supra.

The Virginia court, in *Patterson* v. *Eakin*, also relies (page 55 [12 S. E., 144]), on the *dicta* in *Beach* v. *Woodyard*, 5 W. Va., 231, and *Burnham* v. *Dalling*, 16 N. J. Eq., 310, already mentioned, saying at page 56 (12 S. E., 146): "The rule announced by these decisions is, we think, founded in reason, and is the true one."

In *Woodburn* v. *Woodburn* (1888), 123 Ill., 608, 14 N. E., 58, 16 N. E., 209, a bill against a widow to correct mistakes in a deed, a bill by her to have an accounting with her husband's executor, and two appeals by the executor from rulings of the county court in the administration of the decedent's estate, were consolidated, over objection, on motion of the widow.

This action of the court was assigned as error (as appears from the abstract of counsel's brief given at page 615 [14 N. E., 58]), but the case was reversed on other grounds without discussion of this assignment. The court, however, in disposing of the petition to rehear, seems to have treated the consolidation as effective. See page 622 (16 N. E., 209).

In *Portwood* v. *Huntress* (1901), 113 Ga., 815, 39 S. E., 299, there was no motion made to consolidate, but a bill was filed, wherein complainant prayed:

(a) That an action of ejectment be enjoined.

(b) That a guardian be enjoined from proceeding with his suits to enforce certain claims.

(c) That the sheriff be enjoined from selling the lands involved under mortgage execution.

It was further prayed: "That all of the issues involved in the four pending causes be determined and disposed of by an appropriate judgment to be rendered upon plaintiff's petition."

On demurrer to the bill, the trial judge denied the injunction, and his action in this behalf was affirmed by the supreme court.

In delivering the opinion, LUMPKIN, P. J., says at page 819 (39 S. E. 301): "It may be true that each of the four cases involves an issue, or issues, common to all; but it is certainly not true that all of the issues in each case are identically or even substantially the same. It is only when the latter contention exists that equitable consolidation exists as matter of right."

In addition to the fact that the injunction against the other suits was disallowed, it may further be observed that the opinion on this point, and indeed the whole case, is concerned with the subject of "bills of peace," rather than the consolidation of independent bills in equity, on motion by one of the parties, over objection of the other.

In case of *India Rubber Co.* v. *C. J. Smith & Sons Co.* (1897), 75 Ill. App., 222, the facts as to the consolidation did not appear—the court merely saying, at page 223: "As to the order consolidating, not only was it not er-

roneous, but such orders are to be commended.   Even if there had been no motion by either party, it would have been the duty of the court to have ordered the consolidation when the substantial identity of the subject-matter of the two cases came to its knowledge.   *Woodburn* v. *Woodburn*, 23 Ill. App., 296.''

The case cited by the learned court, in support of its conclusion, is the one which was reversed without decision of this point, in 123 Ill., 608, 14 N. E., 58, supra.

The case of *Oldfather* v. *Zent* (1894), 11 Ind. App., 430, 39 N. E., 221, did not even deal with equity cases, and the motion to consolidate was made in the appellate court.   It has no bearing on the point under discussion.

*Keighley* v. *Brown* (1809), 16 Ves. Jr., 344, is likewise not in point.

There, seven or eight suits for tithes were filed by a rector against different defendants.   Defendants moved, before answering, for a reference to the master to examine and certify whether the causes might not be consolidated.   It was claimed by Sir Samuel Romilly that this motion was "of course."

Lord Eldon, in passing on this motion, said:   "I will consult some of the Barons of the Exchequer, upon this point, not seeing my way to determine what ought to be the practice here. . . .   It appears to me rather the subject of a special application than of course.

"The Court of King's Bench by their power of granting imparlances compel parties to consolidate insurance causes; a strong measure originally; obliging one man in that way to be bound by a judgment against another."

On a subsequent day of the term, the following proceedings were had:

"The Lord Chancellor said, he had mentioned the point to Baron Thompson who had no idea that this order is of course in the Court of Exchequer, though sometimes made under special circumstances.

"The order was not made."

It thus appears that this case, so far from supporting the text, is an authority contra, and it appears to be so cited by Chancellor Cooper in *Knight* v. *Ogden,* 3 Tenn. Ch., at pages 410, 411.

We have analyzed these cases to show that the statement of the rule, by a text-writer of recognized ability, is dependent on *dicta,* rather than on decisions; and this is true in the case of other standard text-books, which we have examined.

(b) Thus, in the Encyclopedia of Pleading and Practice, vol. 4, p. 689, while the broad statement is made that a court of equity has power to consolidate actions "with or without the consent of the complainant," the only authority cited in support of the text is *Burnham* v. *Dalling,* 16 N. J. Eq., 310 (which we have heretofore reviewed), and in the note on the same page it is said: "There is strong authority against the practice of consolidation."

Then follows the citation of our own case of *Knight* v. *Ogden,* 3 Tenn. Ch., 409, and a quotation from Chancellor Cooper's opinion therein, showing that *Burnham* v. *Dalling,* supra, did not decide the point at all, and that the remarks of the Chancellor Green were *obiter.*

(c) In 1 R. C. L., 359, 360, it is said: "Formerly it was considered that a court of chancery had no power to consolidate causes pending therein, but the rule at the present day is the same in equity as at law."

The only citation to support this statement is 58 Am. Dec., 512, note. In this "note" it is said, at page 512: "Chancery has ordinarily no power to interfere with the rights of parties *in invitum* by an order directing the consolidation of independent suits of purely equitable cognizance. *Knight Bros.* v. *Ogden Bros.,* 3 Tenn. Ch., 409. And in *Forman* v. *Blake,* 7 Price, 654, it was held that causes in equity could not be consolidated, and Richards, Chief Baron, said: 'I never heard of an order in the course of my experience for consolidating causes in equity; nor can I perceive upon what principle it can be done. There are many reasons why it should not; and if it be the practice, it is extraordinary.' This rule has, however, been changed, and instances of the consolidation of suits in equity are numerous, and it has been held that the rules for consolidation are alike in law and equity. *Beach* v. *Woodyard,* 5 W. Va., 231; *Wyatt* v. *Thompson,* 10 W. Va., 645."

(Neither of these two cases decides the point, unless the latter can be considered as authority contra.)

In the same volume it is said: "Independent of statute, the power of consolidation has been exercised with the greatest freedom, according to the will of the particular judge before whom the actions consolidated have been pending, to subserve the interest of the parties and the public." 1 R. C. L., p. 360.

In support of this statement, the text cites *Smith* v. *Smith,* 22 Colo., 480, 46 P., 128, 34 L. R. A., 49, 55 Am. St. Rep., 142, and *Viele* v. *Germania Ins. Co.,* 26 Iowa, 9, 96 Am. Dec., 83.

In *Smith* v. *Smith,* supra, consolidation of several actions against different defendants was refused under

the Colorado statute authorizing consolidation. Affirming the action of the trial court, it was said:

"It is urged, however, by appellees, that courts have the inherent right, independent of statute, to consolidate suits at law and actions in equity, where the interest of the parties and the public may be subserved by such consolidation. An examination of the authorities leads to the concludion that, in the absence of legislation, the power of consolidation of actions has been exercised with the greatest freedom according to the will of the particular judge before whom the actions may have been pending, without any definite rule having been established for the guidance of the courts with reference thereto." 22 Colo., 490, 46 P., 132, 34 L. R. A., p. 54.

It seems hardly necessary to point out that this is a *dictum*—consolidation having been refused in the particular case, and the whole matter being governed by statute.

The other case cited, *Viele* v. *Germania Ins. Co.*, 26 Iowa, 9, 96 Am. Dec., 83, deals with the consolidation of four actions at law on insurance policies—or more accurately, the order of court requiring the other three causes to await the decision of the fourth. The supreme court of Iowa was equally divided on this point (26 Iowa, 9, 96 Am. Dec., page 95), and in view of this equal division, the action of the lower court, in allowing the "consolidation," was affirmed.

(d) In what is, perhaps, generally recognized as the leading text-book on equity practice (Daniell), no rule is stated on the subject of consolidation—the text dealing only with the right to stay proceedings in one suit until the decision of the other—but in the note we find the

following: "It is within the power of a court of equity to consolidate actions, with or without the consent of the plaintiffs." 1 Daniell, Eq. Pl. & Pr. (4 Am. Ed.), p. 797, note 4.

But the only authority cited in support of the note is *Burnham* v. *Dalling,* 1 C. E. Green, 16 N. J. Eq., 310.

. (e) In 1 C. J., 1123, the rule is stated as follows: "While there is some authority to the contrary, the great weight of authority, both in this country and in England, is to the effect that the power of a court of equity to consolidate suits is inherent or implied from its general power to make reasonable rules for the transaction and regulation of its business. It has also been held that the court may direct a consolidation with or without the consent of the complainant or defendant, although there is authority to the effect that a consolidation should not be ordered *in invitum.*"

A number of cases are cited in the note as indicating the "weight of authority." Some of these have already been reviewed, including *India Rubber Co.* v. *Smith Co.,* 75 Ill. App., 222; *Woodburn* v. *Woodburn,* 23 Ill. App., 289; *Viele* v. *Germania Ins. Co.,* 26 Iowa, 9, 96 Am. Dec., 83; *Burnham* v. *Dalling,* 16 N. J. Eq., 310; *Patterson* v *Eakin,* 87 Va., 49; *Beach* v. *Woodyard,* 5 W. Va., 231; *Biron* v. *Edwards,* 77 Wis., 477, 46 N. W., 813; and *Keighley* v. *Brown,* 16 Ves. Jr., 344, 33 Reprint, 1014.

Of these, as will be recalled, only *Patterson* v. *Eakin* seems in point as a decision of the question.

We will briefly notice some of the other cases cited in this note.

In *Springer* v. *Kroeschell* (1896), 161 Ill., 358, 43 N E., 1084—a case in which several mechanics' lien suits

were consolidated—the court says, at page 360 (43 N. E., 1085), quoting from *Thielman* v. *Carr*, 75 Ill., 385, that:

"While the general chancery practice is opposed to the consolidation of cases having different parties and involving different rights, yet such a practice is proper when the litigation grows out of the enforcement of mechanics' liens under the statute. . . . "

As will be noted, the court concedes that the general chancery practice is different, and bases its decision on the fact that statutory mechanics' lien proceedings are involved.

It may be observed, that in Tennessee, by the express terms of the statute, concerning mechanics' liens, it is provided that: "If separate suits are brought in the same court, they shall be consolidated. . . . " Code, Shannon, section 5309.

In *Cox Shoe Co.* v. *Adams* (1898), 105 Iowa, 402, 75 N. W., 316, cited as sustaining the text of Corpus Juris, there was a decision that suits in equity, begun in the same court by a number of vendors against a common vendee and mortgagee of the vendee to rescind their contracts of sale, and set aside the mortgage, might be consolidated on motion of the plaintiff, independently of the statute allowing consolidation where two or more suits which might have been joined are pending in the same court.

In support of its ruling, the Iowa court cites (page 411 [75 N. W., 318]); *Russell* v. *Chicago Trust & Savings Bank* (1891), 139 Ill., 538, 29 N. E., 37, 17 L. R. A., 345; *Moore's Admr.* v. *Francis*, 17 Tex., 28; *Biron* v. *Ed-*

*wards*, 77 Wis., 477, 46 N. W., 813; and 4 Ency. Pleading & Practice, 692.

We have already discussed *Biron* v. *Edwards* (decided on the Wisconsin statute), and the text of 4 Encyclopedia Pleading & Practice (dependent on Chancellor Green's *dictum* in *Burnham* v. *Dalling*, 16 N. J. Eq., 310).

In *Russell* v. *Bank*, supra, the point against consolidation was not made until the case reached the appellate court.

"Under these circumstances the objection came too late. Nor is it shown that the appellee has been prejudiced by said order." 139 Ill., 548, 29 N. E., 39, 17 L. R. A., 349.

The remaining authority cited by the Iowa court is *Moore* v. *Francis* (1856), 17 Tex., 28, where the consolidation was also made without objection.

"The parties were present and made no objection, and silence, under such circumstances, should be regarded as a consent to the order made by the judge. . . . "

We have reviewed the authorities on which the Iowa case was decided, for it is one of the few cases actually deciding the point.

Another case, cited in the note to Corpus Juris, as supporting the "majority rule," is *Monroe* v. *Lewald* (1890), 107 N. C., 655, 12 S. E., 287. But on examination of this case, it appears that no order of consolidation was ever made. A creditor's bill had been filed, and the lower court had decided that proceedings supplementary to execution, afterwards begun by another creditor, should be dismissed on account of the pendency of the first suit. It was held that this was erroneous, as the actions might have been consolidated.

In *Hayward* v. *Mason* (1909), 54 Wash., 653, 104 P., 141 (also cited), it is held that the trial court, in its discretion, properly consolidated two equitable actions between the same parties concerning two irrigation ditches. The court's opinion on this point seems to be rested primarily on its previous decision in *Peterson* v. *Dillon* (1901), 27 Wash., 78, 67 P., 397—a merchanic's lien proceeding. That case, in turn, rests on *Oldfather* v. *Zent*, 11 Ind. App., 430, 39 N. E., 221, and *Biron* v. *Edwards*, 77 Wis., 477, 46 N. W., 813, neither of which decided the point.

Another case cited—*Wyatt* v. *Thompson* (1877), 10 W. Va., 645—seems rather to support the contrary rule. There the trial judge "refused to consolidate the causes" (page 649). This was assigned as error, but the supreme court, after pointing out that the parties are different, and that different defenses might have been made, says, at page 650: "It would have been error to have consolidated the causes."

In discussing the matter, the West Virginia court cites with apparent approval the case of *Claiborne* v. *Gross*, 7 Leigh (Va.), 331—a leading authority on the other side of this question, to which we have already referred.

As showing the weight of authority in England, the text cites three cases, viz.: *Foxwell* v. *Webster*, 4 De Gex J. & S., 77, 46 Reprint, 844; *Davis* v. *Davis*, 48 L. J. Ch., 40, and *Keighley* v. *Brown*, 16 Ves. Jr., 344, 33 Reprint, 1014.

We have not had access to *Davis* v. *Davis*, supra, which may support the text. But the other two authorities cited are apparently contra.

We have heretofore reviewed *Keighley* v. *Brown,* and shown Lord Eldon's refusal to grant the motion to consolidate.

In *Foxwell* v. *Webster* (1863), 4 De Gex, J. & S., 77, 46 Eng. Rep., 844, the plaintiff had filed one hundred thirty-four bills against as many defendants for infringement of a patent. Seventy-seven of the defendants (representing four different classes) moved, before putting in answers, that the plaintiff should be directed to proceed in one case only until the validity of the patent should have been decided.

The Chancellor (Lord Westbury) said:

"If you had given me the means of consolidating these suits into batches of defendants all in the same category, I might have striven to break through the ordinary rules of the court and consolidate the suits in some way; but you have not done that."

He then inquired if the plaintiff had any objection to the defendants filing affidavits, showing a full discovery, and undertaking to pay the royalty demanded, if plaintiff should succeed in the one suit.

Plaintiff's counsel having agreed to this, the chancellor let the matter stand over—"his lordship remarking, however, that in so restraining the plaintiff, he was greatly stretching the power of the court."

The case coming on to be further heard, the Chancellor afterwards said: "That if he had already, in what he had done, done some violence to the practice of the court, it was because a case of the present description had never, in all his experience in that court come before him; and if he did violence to the practice, it should be carried to the end of doing the plaintiff service by facilitating his

proceedings, and saving him from the consequences of instituting so great a number of suits."

It is not perceived that this case supports the "general rule."

The Chancellor felt that he had "done violence" to the correct practice, even though the plaintiff consented.

We have thus (doubtless at too great length) examined the authorities on which some of the leading texts depend, and it will be perceived that the rule announced, as supported by the "weight of authority," depends, for the most part, on *dicta,* rather than on actual decisions, and that some of the cases cited are really contra.

(2) We now come to our own cases, which are the principal authorities cited in support of the opposite view.

(a) The leading case is *Knight Bros.* v. *Ogden Bros.* (1877), 3 Tenn. Ch., 409, a case in which the point was directly ruled by Chancellor William F. Cooper, one of the great masters of chancery practice.

Knight Bros. filed the first bill for a partnership accounting, in order to subject the interest of Ogden in the partnership. A final decree was rendered in their favor, and partnership accounting ordered. At this stage of the proceedings, pending the taking of the account, a second bill was filed by creditors of Knight Bros. to subject their interest, and to impound any recovery which they might obtain in the first case. Knight Bros. filed an answer and cross-bill, and one of the prayers of the cross-bill was that the second case be consolidated and heard with the first case.

The case being heard on motion to consolidate, the Chancellor thus reviewed the authorities:

"The books of equity practice are entirely silent on the subject of consolidating causes in this court, from which fact the inference may be fairly drawn that no such practice exists. In *Keighley* v. *Brown,* 16 Ves., 344, Sir Samuel Romilly argued in support of a motion of consolidation made by the defendants in several suits by a rector for an account of tithes, the motion being made as of course. But Lord Eldon was manifestly ignorant of any practice of consolidating causes in equity, for he said: 'I will consult some of the Barons of the Exchequer upon this point, not seeing my way very clearly to determine what ought to be the practice here.' On a subsequent day, he said he had mentioned the point to Baron Thompson, who had no idea that the order was of course in the Court of Exchequer, though sometimes made under special circumstances. The order was, therefore, not made. The note to this case is as follows: 'There are cases, no doubt, in which the Court of Exchequer has ordered several causes, brought for the same matters, involving the like questions, and seeking the same relief, to be consolidated. *Scott* v. *Allgood,* cited in 1 Fowler Ex. Pr., 81; *Mason* v. *Croft* and *Pyke* v. *Brook,* Id., 214. But this court, both when sitting as a court of law and when sitting as a court of equity, has, in later cases, disapproved that practice. *Le Jeune* v. *Sheridan,* For. Ex., 31; *Foreman* v. *Blake,* 7 Price, 654; *Foreman* v. *Southwood,* 8 Price, 575.' In *Foreman* v. *Blake,* Chief Baron Richards said: 'I have never heard of an order, in the course of my experience, for consolidating causes in equity, nor can I conceive upon what principle it can be done.' *The Warden and Fellows of Manchester College* v. *Isherwood,* 2 Sim., 476, was a case where the plain-

tiffs had filed sixteen bills for tithes against different persons, who made the same defence, and moved for the consolidation of the causes. The Vice Chancellor reviewed the authorities, concluding thus: 'It is evident, therefore, that neither in this court nor in the court of exchequer has the practice prevailed of compelling the plaintiff to consolidate his different suits against several defendants; and the present motion, being a mere experiment in opposition to practice, must be refused, with costs.' In *Cumming* v. *Slater*, v. *Y. & C. C. C.*, 484, the vice chancellor refused to make a decree for accounts, it appearing that in another suit a decree for the same accounts had been rendered, the plaintiff in this suit being by the decree an acting party in the other and directed the cause to stand over and come on with the other suit, upon the hearing of that cause on further directions. But in *Godfrey* v. *Maw*, 2 Sim., 485, the same learned judge refused to extend the rule to cases where the two suits were between the same parties and involved the same subject-matter, the frame of the two suits, and the relative position of the parties to each, not being the same. And see *Wendell* v. *Wendell*, 3 Paige (N. Y.), 509, where the Chancellor held that one of two bills of foreclosure was unnecessary, and refused to allow the heirs of the mortgagor to be charged with the costs of more than one, giving the solicitor, who was the same in both suits, leave to elect in which suit he would take the decree. These latter cases indicate the mode in which the court, without consolidation, may control unnecessary litigation. In *Burnham* v. *Dalling*, 1 C. E. Green (16 N. J. Eq.), 310, Chancellor Green expressed the opinion that a court of equity had the power to consolidate causes, with or without the consent of the complainant, and he

ordered three suits of three different wards against the same guardian, after a decree rendered in each case, at the instance of complainants, to be consolidated for the purpose of taking the accounts, there being a written consent to the consolidation. The Chancellor's opinion as to the power of the court was, consequently, a mere *dictum*. He concedes that, even at law, the mode of consolidation is not by uniting the several actions in one record. *Clason* v. *Church,* 1 Johns. Cas. (N. Y.), 29. And our supreme court has held that the consolidation of causes, partly by consent, and partly by order of the court acquiesced in by the parties, does not change the rules of equity pleading, nor the rights of the parties, and that these rights must still turn on the pleadings, proof, and proceedings of their respective suits. *Brevard* v. *Summar,* 2 Heisk., 105; *Lofland* v. *Coward,* 12 Heisk., 546.''

He then reasons out the matter on its merits in this language: ''The general rule undoubtedly is, that every suitor shall be at liberty to conduct his suit as he may be advised. The court ought to have no authority to hamper him by tying him on to other parties, compelling him to await their action, or be subject to the delays incident to their judgment, their whim, or their fate, as by death or marriage. There is even less reason for forcing defendants, against their wishes, into a boat with others; for, having been brought into court by one party, they may well say, 'We prefer to fight it out with that party.' Nor is there any particular advantage to be gained by a consolidation *in invitum,* where each record must, after all, be kept separate, and stand or fall on its own merits. Such matters should be left exclusively to the parties,

whose self-interest will dictate a better agreement for both than the court can force upon either. And the matter of costs is always in the discretion of the court, to be used so as to prevent a multiplicity of suits and decrees from proving profitable, where such multiplicity is possible. The less the parties are interfered with by the court, in the exercise of their legitimate rights, the better. For it will limit the appeals to the discretionary intervention of the court—often a dangerous and always a disagreeable duty. It will, moreover, tend to confine litigation within narrower limits, secure simplicity, and prevent confusion.''

His conclusion is thus announced: ''I am of opinion that the court of chancery has no power to interfere with the rights of the parties, *in invitum*, by an order consolidating independent suits, of purely equitable cognizance And if, in the breaking down of the lines of distinction between law and equity, and the blending the jurisdiction of the courts, cases should arise which, in analogy to the rule at law, might be consolidated, the exercise of such power should be declined, except in extreme and clear cases.

''There is no pretense of necessity in the present instance. Each of these suits is, in its nature, entirely separate and distinct, and may be much more readily disposed of by itself than if blended with the other into one incongruous record, in which the latter end of each will be certain to forget its beginning. The motion to consolidate is refused.''

(b) The case of *Ogburn* v. *Dunlap* (1882), 9 Lea, 162 (in which Judge Cooper, then a member of this court, delivered the opinion) is often cited in connection with

*Knight* v. *Ogden.* But *Ogburn* v. *Dunlap* did not directly rule this point. It was there held that, where cases had been consolidated and heard together by the Chancellor (without objection, so far as the record shows) an appeal in one case did not bring up the record in the other. In discussing this question, it was said *arguendo,* at page 165:

"And it is very doubtful whether the Chancellor has any powers to interfere with the rights of the parties, *in invitum,* by an order directing the consolidation of independent suits of purely equitable cognizance. *Ogden* v. *Knight,* 3 Tenn. Ch., 409. The reason is, that in order to give a court of chancery jurisdiction in any cause, it must have the parties before it by proper process, or appearance, and formal pleadings presenting the issues to be tried between the parties. *Randolph* v. *Merchants' National Bank,* MS. opinion at this term [9 Lea, 63]. For the same reason, the court cannot permit new parties to come in as defendants against the wishes of the complainants. *Comfort* v. *McTeer,* 7 Lea, 652. By the very nature of a court of. equity, there must be orderly pleadings between litigant parties, fairly embodying the facts upon which the court is called, in favor of one party, to effect the conscience of another."

(3) After careful consideration, we are of opinion that the views advanced by Chancellor Cooper, in *Knight* v. *Ogden,* and by the court in *Ogburn* v. *Dunlap,* are sound, both in principal and on authority.

Judge Cooper, as chancellor, and speaking for the court, very fully and explicitly states his reasons for thinking that equity causes should not be consolidated *in invitum.*

What reasons are given by those adopting the contrary view?

(a)  It is said in some of the cases that the right to order consolidation is necessary to prevent a multiplicity of suits.  But equity has always had the power, in a proper case, to prevent a multiplicity of suits—and this without intermingling the pleadings and proof in separate causes until the suits are blended "into one incongruous record, in which the latter end of each will be certain to forget its beginning."

(b)  Again, it is suggested by Chancellor GREEN, in *Burnham* v. *Dalling,* supra, that the power is necessary "to prevent scandalous abuses, and to protect defendants against gross oppression."

Just what these abuses are, or why consolidation is necessary to control them, is not shown.  Chancellor COOPER, on the other hand, very clearly shows the injustice which may result to a litigant "by tying him on to other parties, compelling him to await their action, or be subject to the delays incident to their judgment, their whim, or their fate."

(c)  It is further suggested, in some of the *dicta* or decisions supporting the "majority view," that the same rule ought to prevail in equity as at law, but this seems obviously unsound.  The hurly burly of a trial at law, where the jury makes a general finding for the plaintiff, or for the defendant on testimony of witnesses examined in open court, is not to be compared with the far more complex and delicate issues presented for decision by an equity record, where the chancellor is expected to work out the separate rights of each party with accuracy and discrimination under depositions taken in ad-

152 Tenn.—9.

vance of the hearing, subject to cross-examination only by parties in the particular suit. Chancellor GREEN, apparently, recognized this difference when he said in *Burnham* v. *Dalling,* that "from the nature of the proceeding" (viz.: in equity) "more caution may be required in the exercise of the power by this court."

(d)   Perhaps the most extreme reason urged in favor of consolidation is the claim made *arguendo* in *Beach* v. *Woodyard* (1872), 5 W. Va., 231, 232, that unless the power exist "the defendant would be oppressed, if not ruined, by an unnecessary accumulation of costs."

This might be true of proceedings at law where the costs follow the verdict. But from the very beginning of the chancery court the chancellor has had control over the costs. The winning litigant may be taxed with all the costs. Gibson's Suits in Chy. (2 Ed.), sections 587, 588; 2 Daniell, Chy. Practice (4 Ed.), pp. 1376, 1394, 1395.

But more far-reaching than all this is the utter failure of the courts supporting this view to answer Chancellor COOPER's argument as to the effect of consolidation.

Suppose the chancellor does make an order "consolidating" the several equity suits,—What does he accomplish?

Does this make the pleadings and depositions in suit No. 1 a part of suit No. 2?

It is perfectly well settled in this State that the order has no such effect. The rights of the litigants "must still turn on the pleadings, proof, and proceedings of their respective suits." *Knight* v. *Ogden,* supra; *Ogburn* v. *Dunlap* (1882), 9 Lea, 162, 165, 166; *Hatcher* v. *Royster* (1884), 14 Lea, 222, 228; *Brevard* v. *Summar* (1870), 2 Heisk., 97, 105, 106; *Lofland* v. *Coward* (1873),

12 Heisk., 546, 547, 548; *Mowry* v. *Davenport* (1880), 6 Lea, 80, 91; *Masson* v. *Anderson* (1873), 3 Baxt., 290, 298, 299.

In the case last cited, this court not only lays down the same rule as to the effect of consolidation, but deprecates the practice in this language:

"While there may occasionally arise a case where it may be convenient to hear cases together, as for the adjustment of priorities in several attachment bills against the same property or funds, and the proper appropriation of the fund between the parties having liens on the same; yet there can be but few cases where such practice is of any advantage, and as confusion and mixing separate and distinct claims, by combining as in this case, about five different original bills, with two or three cross-bills, in one record, giving courts great labor and annoyance in disentangling the case, and arriving at the issues between the respective parties to the different bills. The practice is one subject to most serious objection, and one not only not to be encouraged, but to be reprobated, and is earnestly disapproved." 3 Baxt., p. 299.

The rule announced in these cases seems to be generally accepted. 4 Ency. Pleading & Pr., 691; 8 Cyc., 608; Fletcher, Eq. Pl., section 455; 1 Ruling Cas Law, 361; 1 Corpus Juris, p. 1137; *Holmes & Co.* v. *U. S. Fire Ins. Co.* (1906; C. C.), 142 F., 863, 866; *Toledo, etc., Ry. Co.* v. *Continental Trust Co.* (1899), 95 Fed., 497, 506, 36 C. C. A., 155; and see *Handley* v. *Sprinkle* (1904), 31 Mont., 57, 77 P., 296, 3 Ann. Cas., 531, 532, and reporter's note at page 535.

In *Toledo, etc., Ry. Co.* v. *Continental Ins. Co.*, supra, Judge LURTON, speaking for the circuit court of appeals

of the sixth circuit, 'said (page 506, 136 C. C. A., 164):
"The consolidation does not change the rules of equity
pleading, nor the rights of the parties , as those rights
must still turn on the pleadings, proofs, and proceedings
in their respective suits. The parties in one suit do not
thereby become parties in the other, and a decree in one
is not a decree in the other, unless so directed. It op-
erates as a mere carrying on together of two separate
suits supposed to involve identical issues, and is intended
to expedite the hearing and diminish expense. *Brevard
v. Summar,* 2 Heisk., 97-105; *Lofland* v. *Coward,* 12
Heisk., 546."

In the federal courts, as will be recalled, consolidation
of equity causes is allowed by statute. Revised Statutes
U. S., section 921 (U. S. Comp. St., section 1547). *To-
ledo, etc., R. R. Co.* v. *Continental Trust Co.,* supra.

If then, there can be no real consolidation—if each
case must be heard on its own record—it seems apparent
that consolidations *in invitum* can have little beneficial
effect, and may injuriously affect the rights of the par-
ties by enforced delays, and subject other courts to great
labor and annoyance in "disentangling the case," and
arriving at the issues between the parties.

4. It remains to apply these principles to the instant
cases.

If the bills are merely to be regarded as ejectment bills,
they would be essentially actions at law (*Walsh* v. *Crook*
[1892], 91 Tenn., 389, 393, 394, 19 S. W., 19; *Buck* v. *Wil-
liams* [1872], 11 Heisk., 264, 277), and would fall under
the statutory jurisdiction conferred on chancery courts
in this State by the Act of 1877, chapter 97.

But if the suits are in reality bills to remove a cloud from title, they fall under the *quia timet* jurisdiction of the court, and are purely of equitable cognizance. 6 Pomeroy, Eq. Jurisprudence (3d Ed.), section 725.

"A bill to remove a cloud is a head of equity by itself." *Almony* v. *Hicks* (1859), 3 Head., 39, 41; *Coal & Lumber Co.* v. *Patton* (1916), 134 Tenn., 556, 564, 184 S. W., 855.

In such a suit, possession of the land is decreed as incidental relief. *Ross* v. *Scott & Russell* (1885), 15 Lea. 479, 489.

Under our practice, such bills as these may be treated as ejectment bills for jurisdictional purposes. As stated in *Coal Creek Mining & Mfg. Co.* v. *Ross* (1883), 12 Lea, 1, 8, when this court held that a person out of possession might maintain a bill to remove a cloud, "the suit was virtually changed into an action of ejectment."

By section 4970, of Shannon's Compilation (Acts of 1851-52, chapter 152, section 2), "any person having a valid subsisting legal interest in real property, and a right to the immediate possession thereof, may recover the same by an action of ejectment."

Both bills specifically pray that the possession of the land be decreed to complainant. And in the second bill, writs of possession are sought to put complainant into the full and peaceable possession of the land.

We think, therefore, that the cases were properly appealed to this court, as "ejectment suits," within the meaning of the former statute, apportioning jurisdiction between this court and the court of civil appeals, which has, of course, been changed since the hearing of these causes, by chapter 100 of the Public Acts of 1925.

But as regards the question of "consolidation," these causes, involving, as they do, the equitable remedies of cancellation, injunction, and removing a cloud from title, are to be regarded as cases of equitable cognizance, rather than mere actions at law. We think they are governed by Chancellor COOPER's decision in *Knight* v. *Ogden*, and that the causes were improperly and erroneously consolidated over the objection of the defendant.

Nor can we say that this action has in nowise prejudiced her rights.

The two bills, on their face, show that different bodies of land are described, and different titles set up. The second bill frankly admits this and states under oath the reasons for beginning a new suit. Documentary evidence, which takes up many pages of this large record, has been introduced in support of the new titles, as well as the old, and numerous depositions have been taken regarding the matters contained in the two suits—the whole evidence being blended in a somewhat confusing manner.

At the hearing, the defendant specifically excepted to the reading in one case of proof taken in the other, and her exceptions in this behalf were overruled by the chancellor.

Disputed questions of fact, as to whether the defendant's possession was adverse, so as to make certain deeds champertous, and so as to obtain title under the statute of limitations of seven years, arose in each case. There was a controversy under the evidence as to the date of the improvements, by virtue of which Mrs. Taylor was claiming possession. There is some proof tending to show that these improvements were made in 1906, which

might or might not be seven years before the first bill was filed in July, 1913, but which would be more than seven years before the second bill was filed in 1919.

` The defendant, indeed, claims that the second bill was filed after complainant had found out it could not win under the first bill, and that one purpose of "consolidation" was to have the titles set up under the second bill dated back to the filing of the first bill, for the purpose of defeating the statute of limitations.

The chancellor did not file separate opinions in the two cases; nor did he, in the brief opinion filed, set forth (except in a most general fashion) either his conclusions of law or fact. He simply says that on the whole record "the court is of opinion that complainants are the owners of the lands sued for and set out in the respective bills. . . . "

How he arrived at this conclusion, or what evidence he considered, can only be guessed at under this record.

Again, the consolidation resulted in considerable delay. The first suit, begun in July, 1913, was ready for hearing, and was actually heard and decided by Chancellor ALLEN in December, 1914. The second bill was not filed until April, 1919, and the hearing in the "consolidated cases" was not had until November, 1920.

We recognize, and have stated, the various causes contributing to this delay. But it can hardly be doubted that the consolidation was to a considerable extent a contributing cause.

The defendant Mrs. Taylor excepted to the order of consolidation, because the first case had been "prepared for trial long since in so far as defendant is concerned."

We are, therefore, of opinion that the chancellor erred in consolidating these causes *in invitum,* and in allowing proof taken in one cause to be read in the other, and in failing to make separate decrees therein.

Concluding the discussion of this point, we may add that we see nothing in the case of *Clement* v. *Clement* (1904), 113 Tenn., 40, 81 S. W., 1249, which conflicts with the views which we have expressed. That case concerned two suits by different beneficiaries against a benefit association on the same certificate. No error appears to have been assigned on the chancellor's action, and no objection was made, so far as the opinion shows, to a consolidation. See 113 Tenn., pp. 46, 47 (81 S. W., 1249).

II. Another question raised by the record may be briefly considered, viz.:

Should the complainant, A. D. Clark & Co., be denied recovery in these causes, because it had not, when these suits were instituted, complied with the laws of this State prescribing conditions on which foreign corporations may do business?

1. It is contended by the defendant Mrs. Taylor that A. D. Clark & Co., a foreign corporation, which had not then complied with the State law, as to registration of its charter, etc., could not even bring these suits concerning lands situated in this State which it claimed to own.

In *Louisville Property Co.* v. *Mayor & City Council of Nashville* (1904), 114 Tenn., 213, 84 S. W., 810, it was held that the mere purchase of property by a foreign corporation, without registration of its charter, is not unlawful, and that such purchase is valid as against every one save the State.

In *Frankfort Land Co.* v. *Hughett* (1916), 137 Tenn., 32, 54, 191 S. W., 530, the contention that a foreign corporation had no right to bring an action of ejectment in the county where the land lies is likewise overruled.

This was a bill by complainant corporation "to recover two tracts of land in Morgan county, to remove clouds upon its title, and seeking a decree for the value of timber cut and taken away." Page 35 (191 S. W., 531).

But, it is argued on behalf of the appellant Mrs. Taylor that chapter 122, of the Acts of 1891, section 3, made it "unlawful for any foreign corporation to do or attempt to do any business or to own or to acquire any property in this State without having first complied with the provisions of this act."

This act was amended by chapter 81, section 2, of the Acts of 1895, so as to read: "That it shall be unlawful for any foreign corporation to do business, or attempt to do business, in this State without first having complied with the provisions of this act. . . . "

In *Louisville Property Co.* v. *Mayor & City Council of Nashville,* supra, this court said at page 218 (84 S. W., 811): "The effect of an amendment made in this form was to substitute language of the new act, in the sections indicated, for that used in the old act, and these new provisions took effect at and from the time of the amendatory enactment."

Appellant, however, claims that the Amendatory Act of 1895 is unconstitutional, in that it violates section 17 of article 2 of the State constitution, providing that: "All acts which repeal, revive or amend former laws, shall recite in their caption, or otherwise, the title or substance of the law repealed, revived or amended."

The caption of chapter 81 of the Acts of 1895 reads as follows: ''An act to amend sections 2, 3, and 4 of an act passed March the 21st, 1891, being chapter 122 of said acts, and providing for the authentication of copies of charters to be filed with the secretary of State, registering abstracts of same in the register's office in each county in which the company desires, or proposes to carry on business.''

A somewhat metaphysical argument is advanced to show that this caption does not state the substance of the act amended. We think, however, that this criticism is not well taken, and that the caption sufficiently shows the substance of chapter 122, of the Acts of 1891, which is amended.

We are, therefore, of opinion that appellant's first contention must be overruled.

2. It is, however, claimed that A. D. Clark & Co. was actually engaged in the business of buying lands in this State, and was actually doing business within the meaning of the act, as amended, at the time these suits were begun.

This, of course, presents a very different question.

A foreign corporation is doing business in this State, within the meaning of these statutes, when it transacts therein some substantial part of its ordinary business, continuous in character as distinguished from merely casual or occasional transactions.'' *Amusement Co.* v. *Albert* (1913), 128 Tenn., 417, 430, 161 S. W., 488, 491.

Whether the corporation is transacting business, as above defined, is primarily a question of fact. 9 Fletcher, Cyclopedia, Corporations, section 5917 et seq.

We are unable to determine this question satisfactorily, under the present record, as the evidence is quite meager, and the parties do not seem to have properly developed the facts.

III. Certain assignments of error are directed to the chancellor's action in failing to suppress absolutely depositions taken without proper notice, and in directing that they be suppressed merely for the term, with the right given to defendant to cross-examine.

While this action was, perhaps, usual, we cannot say, under the circumstances shown by the record, that the defendant was injured thereby, or that the chancellor's action constituted any abuse of discretion. We shall not, therefore, undertake to review his action. *Shea* v. *Mabry* (1878), 1 Lea, 319, 334.

It may, however, be observed that want of notice, resulting in loss of the right to cross-examine, is something more than a mere formal defect, and we do not wish to be understood as saying that we would not review the action of the chancellor in a proper case.

IV. The appeal, of course, brings these causes up *de novo*, and we might, on the confused record before us, undertake to work out the rights of the parties, and to decide each of these causes.

In view of the fact, however, that substantial property rights are to be determined, and since the causes were tried below on an erroneous basis, and especially in view of chapter 100 of the Public Acts of 1925 (section 12), making it the chancellor's duty to file written findings of fact, we think justice will be promoted by reversing the chancellor's decree, and remanding the cases for further proceedings and another hearing, in accord-

ance with the views expressed in this opinion. *Sartain* v. *Dixie Coal & Iron Co.* (1924), 150 Tenn., 633, 658, 659, 266 S. W., 313, and cases there cited.

We think that either party should have leave to take further proof, if so advised, within such time and under such conditions as the chancellor may prescribe.

The cases, under these conditions, should they again be appealed, will come up with definite findings of fact by the chancellor, on the various controverted questions presented by the records, including the facts as to the right of the complainant, A. D. Clark & Co., to do business in this State, and whether it was, in fact, doing business, as herein defined.

In view of the fact that the causes have already been prepared for trial, and included in one record on this appeal, we suggest that they may properly be heard together on the remand; but in this event, separate findings and decrees will be made in each case.

The complainant, A. D. Clark & Co., will pay two-thirds, and the defendant Mrs. Taylor one-third of costs of this court—the costs below to abide the decree of the chancellor on the remand.

V. In the written arguments of learned counsel for appellant, we find some undignified and intemperate expressions especially the language used in criticism of the former chancellor, and of the chancellor who finally heard these causes.

Such language does not show proper respect for the trial court, nor for this court, and will not be tolerated. We trust that this adminition will be sufficient to guard against a repetition,