Accordingly, I concur in part and respectfully dissent in part.

**Karen M. DUNEGAN**

v.

**Wayne GRIFFITH.**

Court of Appeals of Tennessee, Eastern Section, at Knoxville.

Aug. 15, 2007 Session.

Oct. 8, 2007.

Permission to Appeal Denied by Supreme Court March 10, 2008.

Michael J. Stewart, Chattanooga, Tennessee, for the Appellant, Karen M. Dunegan.

M. Keith Davis, Dunlap, Tennessee, for the Appellee, Wayne Griffith.

## OPINION

SHARON G. LEE, J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

The plaintiff brought this quiet title action asking the trial court to declare her the owner of a parcel of disputed property. Both parties proffered a chain of title ostensibly demonstrating ownership of the unimproved, wooded parcel, and both had been paying property taxes to Bledsoe County on the disputed property. After hearing the plaintiff's proof at a bench trial, the trial court held that the plaintiff's action was actually one for ejectment, which the trial court found "was not plead and which the proof presented at trial was insufficient to sustain," and dismissed the plaintiff's case. We hold that the plaintiff was not required to bring an action for ejectment in order to obtain the relief of a judgment declaring who owns the disputed property. We therefore vacate the trial court's judgment and remand for a new trial.

## I. Background

Karen Dunegan brought this action alleging that she had legal title to a parcel of land in Bledsoe County, Tennessee (the "disputed property") and that certain recorded quitclaim deeds to Wayne Griffith involving the disputed property created a cloud on her title. The disputed property is a remote, unimproved wooded tract, the size of which was apparently not conclusively established but is between 33 and 40 acres. Ms. Dunegan requested that the trial court declare her the lawful owner and vested with absolute and unencumbered title to the disputed property. Mr. Griffith answered, denying that Ms. Dunegan had any interest in the disputed property and asserting that he was the owner. Mr. Griffith also alleged as an affirmative defense that he and his predecessors in title had used and possessed the property openly and exclusively, and paid property taxes on it, for longer than 20 years.

At the bench trial, chains of title for both parties were presented to the trial court, and each party claimed ownership under his or her respective chain of title. It appears neither party demonstrated actual possession of the subject property, but both Ms. Dunegan and Mr. Griffith asserted that they occasionally used the property for recreational purposes. Ms. Dunegan alleged that Mr. Griffith's title was defective because of a mistake in a deed of his predecessor in title, stating an incorrect acreage, and further because of an erroneous tax sale in Mr. Griffith's chain of title where the tax assessor sold a "phantom parcel" of land for delinquency as against an owner alleged to be delinquent in paying taxes on property the owner had sold 12 years earlier.

At trial, Ms. Dunegan attempted to introduce a copy of a survey prepared by Lyle E. Shehi (the "Shehi survey") in 1974 and referenced in a deed ostensibly con-

veying the subject property to Mr. Griffith's predecessor in title. Mr. Griffith objected to the admission of the Shehi survey, arguing that Ms. Dunegan had not properly laid the foundation for its admission by establishing its authenticity. The trial court sustained Mr. Griffith's objection.

At the conclusion of Ms. Dunegan's proof, the trial court held that although her complaint alleged a cause of action to quiet title and remove a cloud from her title, "this case primarily involved an action for ejectment which was not plead and which the proof presented at trial was insufficient to sustain such an action." The trial court dismissed Ms. Dunegan's cause of action.

## II. Issues Presented

Ms. Dunegan appeals, raising the following issues:

1. Whether the trial court erred in dismissing her action because she did not plead or prove an action for ejectment.

2. Whether the trial court erred in holding that the authenticity of the Shehi survey had not been established and excluding the survey from evidence.

## III. Analysis

### A. Standard of Review

■ We review this non-jury case *de novo* upon the record of the proceedings below, with a presumption of correctness as to the trial court's findings of fact unless the preponderance of the evidence is otherwise. Tenn. R.App. P. 13(d); *see also Hass v. Knighton*, 676 S.W.2d 554 (Tenn.1984). There is no presumption of correctness with regard to the trial court's conclusions of law. *Campbell v. Florida Steel Corp.*, 919 S.W.2d 26, 35 (Tenn.1996); *Presley v. Bennett*, 860 S.W.2d 857, 859 (Tenn.1993).

### B. The Dismissal of Plaintiff's Quiet Title Action

■ At the close of Ms. Dunegan's proof, Mr. Griffith moved to dismiss her cause of action, not because it was in reality an ejectment action, but because of his argument that Ms. Dunegan had not met her burden of proof, "by at least the preponderance of the evidence." The trial court raised the issue of ejectment *sua sponte*, and, as stated, dismissed the action, reasoning as follows:

> It strikes me that since there's—It's conceded by the parties that the claims of these parties overlap, and it's not simply a boundary dispute. That, in effect, whether it says this or not, that this is, in fact, a suit for ejectment; and in a suit for ejectment, you have to prove the perfect title. You have to go back to the grant or you have to go back to a common source.

> And I'm concerned that this complaint may—this suit may fail because it does, in effect, when you look at the facts of it and the allegations in it, really sounds an ejectment [sic] than a boundary dispute.

> \* \* \*

> Well, it's the opinion of the Court that this is, in effect, an ejectment lawsuit. It's my opinion that it's a lawsuit, as claimed in the complaint, regarding the alleged title to the disputed real estate. And we're looking at a complete overlap here of either 33 or 40 acres. There's no real dispute about boundaries. The dispute is to title, and when the dispute is to title, it becomes an ejectment lawsuit ... There's been no proof here of any common source. Let the complaint be dismissed.

Ms. Dunegan argues on appeal that the trial court erred in dismissing her quiet

title action and in holding that she was required under these facts to bring an ejectment lawsuit in order to obtain the relief of a declaration as to who owns the disputed property. We agree, having found nothing in our jurisprudence that requires Ms. Dunegan to file her lawsuit as an ejectment action rather than an action to quiet title and/or remove a cloud from her title.

Historically, an ejectment action was considered to be an action at law, whereas a lawsuit to quiet and remove cloud from title was heard in equity. *See, e.g., Bouldin v. Taylor,* 152 Tenn. 97, 275 S.W. 340, 349–50 (1925). In *Stearns Coal & Lumber Co. v. Patton,* a case wherein both parties asserted ownership of the same parcel of land, and the plaintiff sought to have a judicial decree vesting title in the defendant, "the chain of title, and claim of defendant under it ... to be removed as a cloud," the Supreme Court stated the following:

> In this state possession is not necessary to maintain a bill to remove cloud ...
>
> \* \* \*
>
> [I]t is settled in this state that equity has the power to cancel a void instrument whether its character as such, appears from the face of the instrument or otherwise.
>
> Judge Wright, in *Almony v. Hicks,* says: "A bill to remove a cloud is a head of equity by itself. It will lie, although the defendants are in possession, and complainants have the legal title, and might sue at law for the recovery of the property, that not being esteemed adequate relief. \* \* \* A simple statement that the instrument is void, or voidable, with the proper prayer, is sufficient."

*Stearns Coal & Lumber Co.,* 134 Tenn. 556, 184 S.W. 855, 857 (1916) (citing *Almony v. Hicks,* 40 Tenn. (3 Head) 39, 1859 WL 3391 (Tenn.1859)) (internal citations omitted).

Ejectment actions are governed by statute in Tennessee, and the operative provision, Tenn.Code Ann. § 29–15–102, is written in permissive, not mandatory, terms: "[a]ny person having a valid subsisting legal interest in real property, and a right to the immediate possession thereof, *may* recover the same by an action for ejectment." (Emphasis added). The parties have cited no case, nor has our research revealed a case, where a trial court dismissed an action and refused to grant the relief of decreeing who owned disputed property because the plaintiff's cause of action should have been pleaded as one for ejectment. There have been numerous opinions, however, where the issue presented was one of disputed title to real property and the lawsuit was described as one to quiet or remove cloud from title. *See, e.g., Stearns Coal & Lumber Co.,* 134 Tenn. 556, 184 S.W. 855 (1916); *Montgomery v. Tapp,* 204 Tenn. 372, 321 S.W.2d 565 (1959); *Stigall v. Lyle,* 119 S.W.3d 701 (Tenn.Ct.App.2003); *Cate v. Desh Investment Corp.,* No. 03A01–9302–CV–00095, 1993 WL 258780 (Tenn.Ct.App.E.S., July 12, 1993); *Rogers v. Young,* No. 02A01–9604–CH–00081, 1997 WL 401958 (Tenn. Ct.App.W.S., July 17, 1997).

At trial, Candice Stults, tax assessor for Bledsoe County, testified that both parties had been assessed property taxes on the disputed property and that both parties had paid the taxes. Ms. Stults testified that each of the tax cards sent to Ms. Dunegan and Mr. Griffith stated "32.22 acres in conflict," and that she did not know when the property was first designated as being in conflict. With both parties paying taxes and claiming title to the disputed property, it is difficult to understand how the status quo would be acceptable to either party. We are of the opin-

ion that the parties are entitled to the judicial relief of a declaration of who owns what property, and the quieting of the rightful owner's title. In *State v. Cooper*, 53 S.W. 391 (Tenn.1899), a case involving a title dispute similar in some ways to the present one, the Supreme Court stated,

> The tract of land in litigation contains some 600 or more acres, and is a tract of wild, mountain land, . . . and it is not claimed that either party has had such possession as to perfect any right of title or defense under the statute of limitations. The case therefore depends upon the question of the better paper title.

*Id.* at 393. Similarly to *Cooper*, the trial court on remand is called upon to determine who has the "better paper title" and declare the owner of the disputed property.

### C. Admissibility of Shehi Survey

■ We hold that the Shehi survey, undisputedly an "ancient document" falling within the exception to the hearsay rule found at Tenn. R. Evid. 803(16),[1] is admissible and available to assist the trial court in its duty of determining ownership upon remand. The trial court, without further comment, sustained Mr. Griffith's objection that the foundation for admissibility had not been laid because Ms. Dunegan did not establish its authenticity. The Advisory Commission's comments to Rule 803(16) are helpful in addressing Ms. Dunegan's contention that the trial court erred in excluding the Shehi survey:

> If a document . . . affects a property interest, and if it is thirty years old and authentic, the trier of fact may take as true statements within the document. Proposed Rule 901(b) makes thirty years of age one of the requisites for

authentication, but the offering lawyer must also establish normal custody and lack of suspicion.

Tennessee Rule of Evidence 901 provides as follows in pertinent part:

> (a) **General Provision.** The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims.
>
> (b) **Illustrations.** By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:
>
> * * *
>
> (8) *Ancient Documents or Data Compilation.* Evidence that a document or data compilation in any form (A) is in such condition as to create no suspicion concerning its authenticity, (B) was in a place where, if authentic, it would likely be, and (C) has been in existence thirty years or more at the time it is offered.

*See also Jones v. Stokely*, No. E2002–01593–COA–R3–CV, 2003 WL 21487134, at *3–4 (Tenn. Ct.App. E.S., June 24, 2003).

At trial Ms. Dunegan established that the survey (1) was referenced in a deed from one of Mr. Griffith's predecessors in title to another predecessor in title; (2) contained the seal and signature of the surveyor, who Ms. Dunegan alleged had died many years before trial; (3) was in the records of the Bledsoe County Clerk & Master; and (4) had been in existence longer than thirty years. Nothing in the circumstances surrounding the Shehi survey and Ms. Dunegan's attempt to introduce it in evidence raises a reasonable

---

1. Tenn. R. Evid. 803(16) provides an exception to the hearsay rule for "[s]tatements in a document in existence thirty years or more purporting to establish or affect an interest in property, the authenticity of which is established."

suspicion that it is not genuine, and we are of the opinion that Mr. Griffith's objections to the survey go to the potential weight to be afforded it, if any, and not to its admissibility. We therefore hold that the Shehi survey, if properly proffered into evidence upon remand for new trial, is admissible.

### IV. Conclusion

For the aforementioned reasons, the judgment of the trial court is vacated and the case remanded for a new trial on the issue of who owns the disputed property. Costs on appeal are assessed to the Appellee, Wayne Griffith.